AMERICAN SURETY CO. OF NEW YORK v. JONES et al.

(Circuit Court of Appeals, Fourth Circuit. May 6, 1915.)

No. 1334.

1. INJUNCTION ⬅︎239—LIABILITY ON BOND TO OBTAIN INJUNCTION.
   J. brought two actions at law against W., and W. filed a bill to enjoin such actions and have the controversy adjudicated in equity. The court enjoined such actions, a bond being given, conditioned that W. should abide the decision of the court and pay all damages and costs adjudged against him because of the injunction. The court decided for W. as to the claim asserted in one of the actions at law, and perpetually enjoined such action, but allowed a recovery by J. as to the claim in the other action, subject to certain conditions which established rights of W. that could be secured only in equity, and, such conditions having been complied with, it entered a decree that the injunction enjoining the prosecution of such action be dissolved and that such action be dismissed. *Held*, that the surety on the bond was not liable for J.'s recovery against W., nor for any costs, expenses, or damages, as the bond was merely intended

to indemnify J. against any damage he might sustain if it should be determined that his actions at law ought not to have been stayed, and the relief granted to W. established that the injunction was not improvidently awarded, while the injunction was not dissolved because it was improvidently awarded, but because it had fully performed its office.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 542, 543; Dec. Dig. ☞239.]

2. APPEAL AND ERROR ☞344—TIME FOR APPEAL—COMPUTATION.

In a suit to enjoin actions at law, and to have the controversy determined in equity, the court rendered a decree allowing a recovery by the defendant and providing that, if plaintiff failed to pay the amount awarded within 60 days, the surety on the injunction bond should be required to show cause why it should not be held liable. A final decree was subsequently entered, adjudging the surety liable for certain damages and expenses. *Held*, that an appeal by the surety within 6 months from this final decree was in time, as it could not appeal until there was an order or judgment against it.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1889–1893, 1896; Dec. Dig. ☞344.]

Cross-Appeals from the District Court of the United States for the Eastern District of Virginia, at Richmond; Edmund Waddill, Jr., Judge.

Suit by Joseph W. Woolfolk against John T. Jones. From a decree (216 Fed. 807) against the American Surety Company of New York, the surety on an injunction bond, in favor of the defendant and in favor of Henry R. Miller and another, special master and stenographer, respectively, Jones and the Surety Company appeal. Reversed and remanded.

B. Rand Wellford, of Richmond, Va. (Wellford & Taylor, of Richmond, Va., on the brief), for appellant American Surety Co. of New York.

George L. Christian and Marshall M. Gilliam, both of Richmond, Va., for appellant Jones.

Henry R. Miller, of Richmond, Va. (Miller & Miller, of Richmond, Va., on the brief), for appellees Miller and Brown.

Before KNAPP and WOODS, Circuit Judges, and CONNOR, District Judge.

KNAPP, Circuit Judge. The question for decision on this appeal is the liability of the surety on an injunction bond, and the material facts appear to be these:

The appellee, John T. Jones, brought two actions at law in a state court of Virginia against Joseph W. Woolfolk, one for $10,000 and the other for $25,000, basing his right to recover upon certain contracts previously entered into between the parties. These actions were removed into the District Court of the United States for the Eastern District of Virginia. Before trial, Woolfolk filed a bill on the chancery side of the court, reciting at length the actions against him and the contracts upon which they were founded, alleging defenses that could not be set up in a suit at law, and asking that the prosecution of the actions be enjoined and the entire controversy adjudicated by a court

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

of equity. After hearing upon notice the court granted the prayer, and enjoined the prosecution of the actions at law upon condition that complainant give a bond in the penalty of $10,000 with approved security. The bond in question was accordingly given and contains the following provisions:

"The condition of this obligation is such that, whereas, Joseph W. Woolfolk having filed on the chancery side of the United States District Court for the Eastern District of Virginia a bill against the said John T. Jones, and having obtained an allowance of an injunction as prayed for in said bill from said court: Now, therefore, if the said Joseph W. Woolfolk shall abide the decision of the said court, and pay all damages and costs which shall be adjudged against him because of the granting of said injunction in case the said injunction shall be dissolved, then this obligation shall be void; otherwise, to remain in full force and virtue."

There was a demurrer to the bill, which was overruled, answer was filed, and the cause referred to a special master, with instructions to inquire and report. After an extended hearing the special master found and reported, as stated in the stipulation of counsel:

"That Jones was not entitled to recover anything on the $10,000 claim asserted in the first suit at law, and that as to the $25,000 claim asserted in the second suit at law Jones was entitled to $8,651.16, subject to offsets allowed Woolfolk which reduced Jones' net recovery to $6,220.22, with interest from March 14, 1910; and the special master recommended that Jones and Woolfolk each be required to do certain things before receiving the benefit of the master's findings."

By decree of October 23, 1913, the District Court overruled defendant's exceptions to this report so far as the $10,000 suit was concerned and perpetually enjoined its prosecution. As to the $25,000 suit the court held, disagreeing with the special master, that Jones was entitled to recover the sum for which he had sued, subject to certain conditions with which Jones afterwards complied. It is sufficient to say of these conditions that they related to and established rights of Woolfolk which he could not assert in the law action and which could be secured to him only in a court of equity. In January, 1914, after Jones had met the requirements of the November decision, the court made the further decree:

"That the injunction heretofore awarded to said Joseph W. Woolfolk, enjoining the prosecution of the suit at law brought against him by the defendant John T. Jones to recover the sum of $25,000, be and the same is hereby dissolved, and that the said suit at law be dismissed at the costs of the said Joseph W. Woolfolk."

There was a further provision that if Woolfolk failed to pay the sums awarded against him by these decrees within 60 days the surety on his bond be required to show cause why it should not be held liable. The final decree of August 6, 1914, adjudged the surety liable for the special master's fees of $2,500, and the stenographer's charges of $310.15, and also liable to Jones for the—

"sum of $1,835.33 on account of interest which accrued by reason of the delay in the entering of a decree in his favor, whereas a judgment at law would have been quickly had, * * * and the sum of $2,000 as costs incurred in connection with the expensive and serious litigation in which he was involved by the complainant Woolfolk in the injunction proceedings."

From this decree the surety company appeals, on the ground that it is not liable at all, and Jones appeals on the ground that the surety company is bound, to the extent of the penalty named in the bond, for the judgment against Woolfolk.

[1] As above shown the condition of the bond was that Woolfolk "shall abide the decision of the said court and pay all damages and costs which shall be adjudged against him because of the granting of said injunction in case the said injunction shall be dissolved," and Jones contends that the phrase "abide the decision of the said court" imposed the obligation to comply with and carry out the judgment rendered on the merits; that is, to do and pay whatever the court might decree. We are constrained to reject this contention. The bond in question is not an appeal bond or a supersedeas bond. It is distinctly an injunction bond, which was designed to accomplish the ordinary purpose for which security is required when a preliminary injunction is granted, namely, to protect the party enjoined from any loss occasioned by awarding the injunction. It was not intended to secure payment of the sum which might be adjudged due from Woolfolk to Jones, but merely to indemnify the latter against any damage he might sustain if it should turn out that his actions at law ought not to have been stayed. In seeking the meaning of this disputed provision, account must be taken of the situation of the parties, the nature of the litigation, and the extent to which there appeared probable cause for invoking equitable relief. Woolfolk asserted that he had defenses to the suits of Jones which were not available at law, but which would be recognized and given effect in a court of equity. He therefore sought to have the law actions enjoined and the rights of the parties determined in an equitable proceeding, and the allegations in his bill were ample to justify the exercise of equitable jurisdiction. If the outcome of the trial should establish his right to seek the interposition of a court of equity, the law actions against him ought not to be prosecuted, and no injustice would be done to Jones if those actions were stayed. But since it might transpire that Woolfolk's claim to equitable relief was unfounded, and that in such case Jones might suffer damage because his suits were enjoined, the court very properly required Woolfolk to give security for the payment of whatever damage resulted to Jones from having his law actions stayed, if the event proved that their prosecution ought to have been permitted. In our opinion this was the evident and only purpose of the bond, and its provisions should be construed accordingly. It is not necessary to speculate upon what was meant by the words "abide the decision of the said court," or decide whether they added anything of consequence to the other provisions of the bond, since it is enough to say that they were not intended, and could not have been intended, to secure payment of the judgment which might be rendered against Woolfolk on the merits of the dispute.

The foregoing suggests the views we entertain as to the liability of the surety. This depends, in our judgment, upon whether the injunction was properly awarded, and the result of the litigation removes that question from the field of doubt. The injunction was merely ancillary to the equity suit, and the object of granting it was

to allow a court of equity to adjudicate the entire controversy between the parties unrestrained by the pending actions at law. If that controversy could have been determined in the common-law actions, their prosecution ought not to have been stayed; but if it was of such a nature that the aid of a court of equity was necessary to the ends of justice, the suits at law were properly enjoined. In other words, if Woolfolk had failed to establish his right to have the whole dispute settled in a court of equity, it would follow that the injunction he sought was improvidently awarded. In that case his bill should have been dismissed and Jones thereby left free to go on with his law actions. Had this been the result, Jones would have been entitled under the terms of the bond to recover from the surety such damages as might be shown to have been suffered by him in consequence of holding up his suits by injunction. But that was not the outcome of the litigation. On the contrary, the record shows that Woolfolk was sustained in his appeal to a court of equity, and this conclusively appeals from the course of the proceedings and the decrees finally entered. So far from dismissing Woolfolk's bill on final hearing, the court held in effect that he had good cause for invoking equitable relief, because the rights he claimed as between Jones and himself, and which were in part accorded to him, could not be secured in the suits at law. Not only was his resort to equity justified by the action and decision of the court, but he was afforded substantial relief. The action for $10,000 was completely defeated and permanently enjoined. It is true that Jones was given a judgment for $25,000, the sum for which his second action was brought; but to obtain this judgment he was required to do certain things which were of material advantage to Woolfolk. The conditions imposed upon Jones related to matters which apparently would have prevented recovery in his law action, if Woolfolk had been able to prove them in that action. It thus appears, even as to the $25,000 suit, that Woolfolk was entitled to maintain his bill in equity, and that the injunction was properly awarded. In short, the record demonstrates that the controversy between the parties was of such a character and involved such issues as to require in the interest of justice the adjudication of a court of equity. This being so, and it seems to us indisputable, there is no ground for contending that the injunction was improvidently granted. The whole scope of the inquiry and the decrees of the trial court affirmed the propriety of settling this complicated dispute in an equitable proceeding, and that proceeding was rightfully made exclusive by restraining the common-law actions.

The asserted liability of the surety company rests altogether upon the decree of November, 1913, which in form of words dissolved the injunction. But this dissolution, to treat it as such, was not ordered because the injunction had been improvidently awarded, but because it had fully performed its office. The controversy between Jones and Woolfolk was completely determined in the equitable proceeding, to which the injunction was an aid, and it was then of no consequence whether the injunction was dissolved or made perpetual. The whole litigation was ended in that proceeding, so far as the trial court was concerned, and this accomplished the purpose for which the injunction

was granted. After Jones had complied with the conditions imposed by the first decree, the court proceeded to give full relief and finally adjudicate in the chancery cause all the rights of both parties. The necessary effect of this was to put an end to the common-law action, and it did not then matter whether that action was dismissed or permanently enjoined. If the decree had made permanent the injunction against the $25,000 suit, instead of dismissing it, there would be no ground for claiming that the surety was liable; but the substance and effect of the decrees actually entered are precisely the same as they would be if the common-law action had been left nominally pending, but perpetually stayed, because the most effectual stay of that action was its dismissal. The liability of the surety must be measured by the results accomplished in the equity suit, the substance and necessary effect of the adjudication in that suit, and not by the form of words embodied in the decree. Upon the issue as to whether the equity suit was warranted, it is evident from the developments at the trial and the comprehensive decrees entered that Woolfolk prevailed, and since he prevailed upon that issue it cannot be said that the injunction was not properly awarded. The test of liability on the bond was the right of Woolfolk to have the law actions enjoined and the whole controversy settled in a court of equity. That right was fully established by the outcome of the litigation, and it therefore follows that the surety is not liable. These views are sustained by authority, and no case at variance therewith has been brought to our notice. We quote the following:

"And, in general, wherever an injunction is rightfully obtained upon sufficient grounds, and is afterwards dissolved upon the removal of those grounds, complainant should not be required to pay damages upon the dissolution, having had good cause for the injunction in the first instance. Thus, where judgments for the purchase money of real estate are enjoined on the ground of the defective title, and the dissolution is granted upon the title being made good, no damages should be allowed against complainant." High on Injunctions, § 1678.

"It is held that no right of action accrues upon an injunction bond until the court has finally decided that plaintiff was not entitled to the injunction, or until something occurs equivalent to such decision. But no damages can be recovered by the party enjoined, although the Court of Appeals decided the suit against plaintiff, unless the judgment amounts to a determination that plaintiff was not entitled to the injunction at the time it was issued." 22 Cyc. 1027. See note 39.

[2] It is argued on behalf of the special master and the stenographer that the appeal as to them should be dismissed, because not taken in time; but we think it clear that the contention is without merit. The surety company could not appeal until there was some order or judgment against it, and that did not happen until the entry of the decree of August 6, 1914, which was less than six months before the appeal was brought.

The conclusions above stated make it unnecessary to refer to the other questions discussed in brief and argument. The decree against the surety company must be reversed, and the cause remanded for further proceedings in conformity with this opinion.

Reversed.