OLIVER IRON MINING COMPANY AND OTHERS v.
INDEPENDENT SCHOOL DISTRICT NO. 35 AND OTHERS.[1]

May 18, 1923.

No. 23,392.

Limitation in section 2917 does not apply to levy of tax by school board to
meet interest and bonds authorized by the electors.

1. This provision: "In independent districts no tax in excess of
eight mills on the dollar shall be levied for the purpose of school sites
and the erection of school houses," found in section 2917, G. S. 1913,
is construed as a limitation on the school board, so that the board may
not in any one year levy a greater tax for the purposes stated, but is
not a limitation upon the power of the electors of such a district to
issue bonds for the same and other purposes, under subdivision 4,
§ 1855, G. S. 1913; and, when such bonds are issued, the school board
must levy a tax sufficient to meet interest and bonds as they mature
unaffected by said provision in section 2917.

State Constitution points to this construction.

2. That such is the proper construction is indicated by sections 5
and 6, art. 8, of the Constitution and by the bonding statute referred to.

No statutory limit to such bonded debt, and building contracts are valid.

3. No provision in the statutes relating to the issue of bonds by
independent school districts, in the class of the defendant district, for
the purposes mentioned in said subdivision 4, § 1855, places a limit
upon the indebtedness that may be thus created. Hence, the contracts,
for the construction of the school buildings involved, entered when the
issue of sufficient bonds had been authorized to meet the amounts of
the contracts, are not in violation of section 2058, G. S. 1913, even
though the eight mill tax levied under section 2917 is not sufficient to
care for the interest and maturing bonds.

Contracts beyond limit of bonded debt may be validated by the electors.

4. Contracts made when not sufficient bonds had been authorized
to meet the obligations incurred may be validated by the electors vot-
ing to issue sufficient additional bonds and appropriating balances from
funds not otherwise set aside to cover all the contracts let.

[1] Reported in 193 N. W. 949.

Findings as to erection of buildings sustained.

5. The findings that the school district had not recklessly, arbitrarily or extravagantly used its powers in the erection of school buildings involved is sustained.

Plaintiffs guilty of laches.

6. It is also *held* that the evidence sustains the finding that plaintiffs had been guilty of such laches in beginning the suit that, as a matter of law, they should now be estopped from questioning contracts under which the district has acquired valuable structures which it now retains and uses for a proper purpose.

Action in the district court for St. Louis county against Independent School District No. 35 to have certain contracts entered into by the district declared invalid because in violation of G. S. 1913, § 2058, and amendments, and to restrain the payment of any money and the completion of the work thereon. The case was tried before Hughes, J., who made findings and denied plaintiffs any relief with the exception noted in the first paragraph of the opinion. From orders denying their motion for a permanent injunction, their motion for amended findings and their motion for a new trial, plaintiffs appealed. Affirmed.

*Washburn, Bailey & Mitchell,* for appellants.

*H. V. Mercer,* for respondent school district and its officers.

*J. C. McGilvery* and *Warner E. Whipple,* for respondent bank.

*Gunderson & Leach, Shearer, Byard & Trogner, Edwin D. Buffington, Ambrose Tighe, Archer & Rosemeier, Austin & Austin, Charles T. Wangensteen, W. E. Whipple* and *A. R. Folsom,* for respondent contractors.

HOLT, J.

The Oliver Mining Company and certain other mine owning corporations, as plaintiffs, instituted this action, in October, 1921, against Independent School District Number 35, its officers, and a number of persons and corporations with whom the school district had entered contracts for the construction of a grade school building at the village of Kinney and the enlargement of the high school

building adjoining the village of Buhl in said district, for the purpose of declaring such contracts invalid and restraining the officers of the district from entering further contracts relative to the erection and equipment of school buildings until the financial status of the district permitted its being lawfully done. The several defendants answered raising the issues that the contracts were valid; that there had been no needless expenditures in the erection of the buildings; that plaintiffs had been guilty of laches and were estopped from challenging the validity of the contracts; and, by supplemental pleadings, that the electors, since the suit and before the trial thereof, had ratified and approved of all that had been done in the premises. Findings of fact and conclusions of law were made denying plaintiffs all relief, except as to the contract with the defendant bank under which the bank had been paid $1,624.23 to act as the fiscal agent of the district. This contract was held invalid and the bank directed to return the said sum. All the other contracts were held valid and enforceable. From the order denying a new trial, plaintiffs appeal.

A short summary of the situation may be thus stated: The School District No. 35 is an independent school district, and, in addition to the villages mentioned, includes other mining locations and an extensive sparsely settled territory bordering the iron range between Virginia and Hibbing. The total population of the district is less than 5,000 and the school enrollment about 1,300 in the day schools and nearly 500 in the night schools. In 1918, when the school board began to plan for additional buildings, there was room to accommodate from 100 to 150 more pupils than the enrollment, but some classes had to be so large as to be detrimental to efficient school work, and the rooms or places assigned to pupils were not always suitable. F. W. Kerr & Company, a corporation, was engaged by the board to prepare plans for a grade school building at Kinney and for additions to the Buhl high school building. Such plans were prepared. However, in 1919, before any contracts were let, the voters, at a duly called election, authorized the construction of the building and additions mentioned and directed the board to

obtain a state loan for $450,000 to finance the project. The loan was obtained. The voters at elections subsequently held have authorized further bond issues as follows: $300,000 on May 1, 1920; $500,000 on August 9, 1921, and $500,000 on January 30, 1922. In the building fund on January 1, 1919, there was nothing. At the end of the year there was left, including the proceeds of the state loan, a balance of $361,380.65. The annual tax for 1920 brought the building fund $99,796.46, and for 1921, $89,285.48. Besides these funds so provided there was in the general funds of the district, not accumulated for salaries or current school purposes, the following sums: At the end of 1919, a balance of more than $50,000; at the end of 1920 a balance of $132,387.75, and at the end of 1921 a balance of $323,000. These balances the court finds to have been transferred by the school board to the building fund, at times not disclosed, which transfers were ratified by the electors at an election held January 30, 1922.

The contracts attacked as illegal in this action were entered at various times in the years 1920 and 1921, amounting to a total of something over $2,300,000, including $144,000 paid as architect fees. During the time in question the assessed valuation of the district was about $12,000,000. It is not necessary to be more specific as to dates or amounts of the several contracts.

No finding of fact is assailed as not supported by the evidence, except the last two which will be noticed later. There was a motion to strike out several findings and to amend others, but, as we understand it, this was based on the theory that such findings are immaterial or do not constitute a legal defense to plaintiffs' cause of action, rather than on any claim that they are inaccurate or unsustained.

Plaintiffs ground their right to relief mainly on their construction of sections 2058 and 2917, G. S. 1913. The claim is that section 2058 prohibits and nullifies every school building contract of an independent school district, unless the amount on hand in the building fund with the 8-mill tax authorized by section 2917 provides enough to pay the contract price. If this be the right construction, the trial court erred in his conclusions of law, unless plaintiffs are

estopped by laches to urge the invalidity of the contracts, or unless the electors had the power to ratify the same, for one of the findings of fact is: "The school board of said independent school district during the years 1920 and 1921 at many times awarded contracts for the erection of school houses far in excess of the moneys on hand in the building fund and in all funds, such excess amounting at times to hundreds of thousands of dollars and an amount which would require a levy of much more than eight mills upon the dollar of the taxable property of the district to pay."

Chapter 13, p. 37, Laws of 1865, was the first authorization for the organization of independent school districts. In section 16, p. 43, thereof is this proviso: "Provided that no tax shall be levied in any one year exceeding eight mills on the dollar for the purpose of building a school house or school houses, or procuring sites therefor." In slightly different words, this limitation has ever since been found in our statutes, and when the revision consolidated sections 1558, 3677, 3807 of General Statutes 1894 into the present section 2917, G. S. 1913, the same inhibition is found in this sentence thereof: "In independent districts no tax in excess of eight mills on the dollar shall be levied for the purpose of school sites and the erection of school houses." In common school districts the voters at the school meetings fix certain of the tax levies, but in independent districts the school board fixes the levy, and may do so to a certain extent without the approval of the voters first obtained. Hence we construe the limitation quoted as one upon the board so that, for the purposes stated, it may not levy in any one year more than 8 mills on the dollar of the taxable property in the district. But we do not think this a limitation upon the power of the electors of the district to raise funds through loans or bonds to erect needed school houses or equip the same.

In State v. Babcock, 87 Minn. 234, 91 N. W. 842, it was held that independent districts were not like common school districts limited as to the amount of the tax levy for the support of schools. And Robbins v. School District, 10 Minn. 268 (340) and Sanborn v. School District, 12 Minn. 1 (17), determine that even in common school

districts the limitation upon power to levy a tax for school buildings did not measure the power of the district to provide funds by borrowing money to be repaid in the future.   Upon the independent as well as the common school districts, the duty is laid to provide school buildings.   G. S. 1913, § 2715.   And the school board of an independent district, when authorized by the voters of the district, must erect the needed school houses, and provide by tax levy necessary funds for the conduct of schools, the payment of indebtedness, and all proper expenses of the district.   G. S. 1913, §§ 2746, 2757.

Not only do we fail to find any direct limitation of the amount of indebtedness an independent school district may incur for the purpose of erecting and equipping school buildings, but the provision in sections 5 and 6, art. 8, of our Constitution, at least by inference, forbids construing G. S. 1913, § 2917, as a limitation upon the powers of the voters of an independent school district to issue bonds or borrow funds for building purposes.   By these constitutional provisions the state is permitted to invest its permanent school and university funds in bonds of a school district at least up to an amount of 3 per cent of the assessed valuation of the taxable real estate of the district, provided the total bonded indebtedness does not exceed 15 per cent of such valuation.   This would countenance a bonded indebtedness of this district for buildings and sites in excess of $1,500,000.   An 8-mill tax would only provide the interest, leaving nothing for the payment of principal as the bonds mature, or allow for the tax levy provided for in said section 5 of article 8, of the Constitution.

Education has always been a vital concern of the people of this state.   The Constitution lays the duty upon the legislature to establish a general and uniform system of public schools.   Article 8. Such a system cannot exist without proper school houses and equipment.   Legislation has dealt with this duty as new demands and problems arose.   Increased population, wealth and prosperity engendered desires for better school buildings and more equipment. The cheap little school houses of the pioneers, devoid of nearly every facility, have given way to substantial, imposing and ornate struc-

tures equipped with instrumentalities never dreamt of by the foremost educators of a generation ago. The small school districts have been consolidated and large independent districts formed. It was soon discovered that the simple and economical way of paying as you go with a tax levy by the voters at the annual school meeting would not suffice. So the legislature provided the method of raising the required means for buildings and betterments from bonds, authorized by the electors and issued and disposed of by the board. G. S. 1913, §§ 1854, 1855, 1968. We do not find that the legislature has thus far sought to place a limit upon the amount an independent school district may bond itself, except as to such a district located within a city having more than 50,000 inhabitants. G. S. 1913, §§ 1861, 1862. In fact G. S. 1913, § 1851, excepts school districts from the limitation therein made as to the power of municipal corporations to contract indebtedness.

It may be that the need of a limit has not yet become apparent in the case of school districts. Where nearly all the electors bear somewhat equally the burden of paying the bonds voted, there is not much danger that the bonding will be excessive or that the funds thus raised will be wasted in extravagance. But it may be that conditions such as are disclosed by this record call for legislation. It seems that in this district the owners of the great bulk of the taxable property are not voters. There may be a disposition on the part of the voters in that situation to spend, with a too free hand, money that is mostly derived from others, especially when the cause appears worthy. It is rather startling that in a district containing less than 5,000 inhabitants the voters will spend over $2,000,000 to erect and equip two school buildings. This means an outlay of more than $400 for every man, woman and child. It also means that more than one-sixth of the value of all the taxable property is put into these two buildings. There are four more school buildings in the district and if these need rebuilding there might be another enormous expense. Over $140,000 have already been paid in architect's fees for the two buildings and the end is not yet in sight. Not so very long ago, the sum here paid the architect would have been

deemed amply sufficient to erect a suitable high school for a district containing no larger population than that of the defendant district. But these are matters for the legislature and not the courts.

Independent school districts, in the class within which falls the defendant district, have been granted the power to vote bonds without limit, we think, and, when once voted, it becomes the duty of the school board to levy a tax sufficient to meet the obligations thus incurred. United States v. New Orleans, 98 U. S. 381, 393, 25 L. ed. 225; Oconto City Water Supply Co. v. City of Oconto, 105 Wis. 76, 86, 80 N. W. 113; Richards v. Sup'rs of Lyon County, 69 Iowa 612, 29 N. W. 630. It is also to be noted that the bonding statute includes other matters for which money may be raised by loans than for building school houses and procuring sites to which the restrictions from section 2917 are confined. G. S. 1913, § 1855, subd. 4. The limitation to an 8-mill levy applies only where the school board proceeds to accumulate a fund for building purposes, the contracts to be let after the fund is in hand or fully covered by one year's levy, and not to a case where the district, by a proper vote of its electors, has determined to issue bonds to finance the building project. In this connection these words from Sanborn v. School District No. 10, 12 Minn. 1 (17), are pertinent and also bear on the question of ratification hereinafter discussed [page 13 (38)]:

"That the trustees are limited by the amount directed by the district meeting to be expended for a school-house, when so specified, is, we think, beyond doubt, and that in the absence of any ratification of the action of the trustees by the district, the district would not be liable; but that the action of the trustees may be ratified so as to bind the district, we have no doubt. The district, in district meeting, may determine any amount they see proper for the erection of a school-house. Their power is not limited in this respect, but only as to the amount of tax they may levy in any one year to meet it; nor does the exercise of authority to thus determine the amount exhaust the power of the district; it is a general power in the corporation."

An apt statement of the same thought is found in City of Fort Madison v. Fort Madison Water Co. 114 Fed. 292, 52 C. C. A. 204.

It follows that, to the extent the district, by accumulated funds, by loans and the issue of bonds, had authorized the school board to finance the buildings and equipment in question, contracts could be entered without violating G. S. 1913, § 2058, which provides that "it shall be unlawful for the authorities of any county, town, city, village, or school district, unless expressly authorized by law, to contract any debt or incur any pecuniary liability for the payment of either the principal or the interest of which during the current or any subsequent years it shall be necessary to levy a rate of taxes higher than the maximum prescribed by law. Every such contract shall be null and void" as to the corporation. But, according to the finding above quoted, a great many of the contracts here involved were executed when no means had been provided to meet the obligations thereby incurred.

Therefore, an important question is whether such of the contracts as were entered when unauthorized or forbidden by said section 2058 could be validated by the subsequent action of ratification by the electors at the meeting held January 30, 1922, long after this action was begun. The well-established rule of law is that contracts with a municipal corporation void in a primary sense are incapable of ratification, but that those void in a secondary sense may be ratified. The distinction between the two is well pointed out in Minnesota Thresher Mnfg. Co. v. Langdon, 44 Minn. 37, 41, 46 N. W. 310, and Bell v. Kirkland, 102 Minn. 213, 113 N. W. 271, 13 L. R. A. (N. S.) 793, 120 Am. St. 621, and prior cases referred to therein. Later decisions illustrate the same distinction. Jackson v. Board of Education, 112 Minn. 167, 127 N. W. 569; White v. City of Chatfield, 116 Minn. 371, 133 N. W. 962; Laird Norton Yards v. City of Rochester, 117 Minn. 114, 134 N. W. 644, 41 L. R. A. (N. S.) 473.

In our opinion the contracts here drawn in question clearly fall within the class denominated void in the secondary sense. The construction of these buildings had been properly voted by the district. They were to serve a legitimate purpose. It was the duty of the district to provide the means therefor. Had bonds in an amount sufficient to cover all the contracts been voted before the contracts

were let, no question of their validity could have been raised, as we view the law. There was no lack of power in the board to enter such contracts, nor lack of power in the district to provide the means to meet them, since, as we hold, there is no limit fixed beyond which this independent district may not bond itself for school buildings and equipment. This was accomplished at the meeting duly held January 30, 1922, by the bond issue then voted and the transfer to the building fund of balances in the treasury, not otherwise appropriated.

Our attention has been called to no statute prohibiting the voters of a district from transferring to the building fund or approving the use of moneys for building purposes in the hands of the district not required to be kept or set aside for some particular object. The balances here transferred or used do not appear to have come from the current school fund, and this statement of the law from the opinion of the Attorney General, Opinion No. 66, 1908, is applicable, "but moneys received from the one mill tax and the balance of money raised for specific purposes, when such purposes have been accomplished, can be used for building a school house, if it has been so decided by the voters at the annual or a special meeting." See also opinion of Chief Justice Fisk in Stinson v. Thorson, 34 N. D. 372, 158 N. W. 351. The ratification must be held effective and the transfer or approval of the use of balances proper.

Besides the cases already cited the following sustain the ratification: Swenson v. Village of Bird Island, 93 Minn. 336, 101 N. W. 495; Sorenson v. School District, 122 Minn. 59, 141 N. W. 1105; McGillivray v. School District, 112 Wis. 354, 88 N. W. 310, 58 L. R. A. 100, 88 Am. St. 969; and O'Loughlin v. Dorn, 168 Wis. 205, 169 N. W. 572. Johnson v. Board of Co. Comnrs. 93 Minn. 290, 101 N. W. 180, and other like cases, cited by appellants, are not in point, for they are based on fixed limitations beyond which the municipal corporation had no power to pass.

It is proper at this place to state that the opinions rendered from the office of the attorney general have been that G. S. 1913, § 2917, does not limit the power of the electors of a common or of an independent school district, such as this, to bond the district for the

erection of school buildings to such an amount that an annual levy of an 8-mill tax must meet the interest and bonds as they mature, and also that surplus funds not from the current fund may be used for building purposes. Opinion No. 186, Atty. Gen. Rep. 1915 and 1916; also opinions of April 29, 1920, and of January 24, 1921; and on balances, Opinion No. 66 Atty. Gen. Rep. 1908. By G. S. 1913, § 2775, such opinions are made the guide of school authorities until overruled by a court.

The court found "that in determining to construct the elementary grade school building at Kinney, the power house at Kinney, and the additions to the said Buhl high school, there was not such a reckless and arbitrary use of power as to indicate fraud, bad faith, or a wanton disregard of the rights of the taxpayers of the school district." This finding is challenged. To those of us who struggled under the primitive conditions of the early days in this state to obtain an education, the plans for these buildings and equipments may appear elaborate and even extravagant. But superintendents and teachers of today testified to the contrary, and the record is devoid of any expert testimony showing extravagance in workmanship or materials, though there is some evidence tending to show that a too rapid increase of pupils in the near future was anticipated by the size of the additions to the high school. However, we think the finding is amply sustained by the evidence, for it remains true that to the electors and the school board, and not to the courts, is entrusted the selection of the type of school buildings to be constructed, and how to anticipate the future.

The other finding attacked is: "That the plaintiffs, by delaying the bringing of their action until the improvements being made by the school board were so nearly completed, are chargeable with laches." We think this finding well sustained. And the legal result would necessarily be that plaintiffs were not entitled to an injunction, even had there been no ratification by electors.

The evidence is that from the very first plaintiffs knew of the progress of the work. They knew that the addition to the high school building was not confined to one wing. It appears that the

mining companies keep a close watch upon the doings of municipal corporations wherein are mines or ore lands. A bureau, employing several men, is maintained for that purpose. Head men of the Oliver Mining Company were consulted in respect to the plans. They kept tab of the meetings held, the bonds voted, and the contracts as they were let. The need of the building at Kinney is not disputed, nor that some addition should be. made to the high school at Buhl. Notwithstanding this, the suit was not begun until the work was nearly completed as to all contracts. No contract remains wholly unperformed. There is not the slightest imputation of bad faith on the part of any of the contractors or subcontractors. So far as completed the district makes use of the buildings, and undoubtedly will continue to claim and use all labor and material that has been incorporated therein. We think plaintiffs waited too long before invoking the equitable powers of the court. To now grant the relief asked would work great harm and injustice to the contractors.

Taxpayers may not stand by and see others put labor and material in public improvements and when these are nearing completion have the contracts therefor adjudged void and payments thereon enjoined. Chamberlain v. Town of Lyndeborough, 64 N. H. 563, 14 Atl. 865; Parker v. Concord, 71 N. H. 468, 52 Atl. 1095; Tash v. Adams, 10 Cush. (Mass.) 252; Brown v. Merrick County, 18 Neb. 355, 25 N. W. 356. The delay to institute the suit until the defendant contractors had to a great extent, or nearly entirely performed, estops plaintiffs from attacking the contracts. To permit them to so do now would accomplish a wrong to which a suit in equity does not lend itself. In White v. City of Chatfield, 116 Minn. 371, 133 N. W. 962, Justice Bunn says: "Conceding that the bonds were illegal, a court of equity should not enjoin their payment when the city has received and retains the money paid by the holders." So here, the taxpayers of the school district should not be heard, after they have let the contractors contribute their money, labor and material to the erection of structures which the district retains and will use, to ask a court of equity to annul the contracts.

The writer appreciates the lack of ability adequately to treat, within the space that ought to be allotted to an opinion, the 800 pages of exhaustive briefs with which the court has been favored. An analysis of the many authorities cited to the contention of plaintiffs would unduly extend the decision without aiding in the construction of section 2917, which is deemed the pivotal matter in the case.

The order must be affirmed.