# INDEPENDENT SCHOOL DISTRICT NO. 35 AND OTHERS v. OLIVER IRON MINING COMPANY AND OTHERS.[1]

May 14, 1926.

No. 25,110.

**New trial granted.**

Action on an undertaking, given pursuant to G. S. 1923, § 9388, upon the granting of a preliminary injunction, and upon a supersedeas undertaking given on appeal. It is *held*:

**Issues in injunction suit cannot be retried.**

(1) The issues litigated in the injunction suit are conclusive in this action and cannot be relitigated.

**Record in that suit admissible in evidence, records in other suits inadmissible.**

(2) The record in the injunction suit was properly received as proof of what issues were therein litigated, but the records in other actions not dealing with the contracts involved in that suit were improperly received.

**Discretion of trial court respecting bond required upon preliminary injunction.**

(3) The trial court under our statute has no discretion to grant a preliminary injunction, after a hearing, without exacting a bond. It has discretion as to the amount of the bond above the minimum fixed, but such discretion is to be exercised so as to protect the party enjoined against loss likely to result directly from the restraint imposed by the writ.

**Defenses available in action upon supersedeas bond.**

(4) In an action on the supersedeas bond given on appeal from a decision in an injunction suit, affirmed in this court, holding plaintiffs therein not entitled to an injunction, there can be no defense to the actual damages caused the defendants therein, except such equitable defenses as are available in ordinary actions on contract.

[1]Reported in 208 N. W. 952, 210 N. W. 856.

**In such action findings on defensive issues of fact in original suit must be given effect.**

(5)   Where two separate issues of fact are pleaded as a defense in a suit for injunction and findings are made as to each, both must be given effect in the action upon the bond.

**Plaintiffs not estopped by answers of defendants' attorneys to queries of judge.**

(6)   The incident of a legal opinion, drawn by the court from one of the attorneys representing the defendants in the injunction suit, is not sufficient upon which to predicate an estoppel as a defense to the undertakings in suit.

**Effect of undertaking upon preliminary injunction.**

(7)   The undertaking upon the preliminary injunction stayed the hands of the defendants therein from the time the writ was granted, even though by supplemental answer another defense was tendered. At no time after the writ issued could defendants have had any hope that an application to dissolve it would have been granted.

**Laches not used as basis for cause of action.**

(8)   A recovery herein is based upon the undertaking or contract of defendants, and the laches found in the injunction suit is in no sense sought to be used herein as a basis for a cause of action.

**School district not entitled to attorneys' fees.**

(9)   There may be a discretion in allowing attorneys' fees for procuring the dissolution of an injunction in a suit upon the bond, the same being costs incident to the litigation and not damages directly flowing from the restraint imposed by the writ; but under the rule in this state the school district is not entitled to attorneys' fees, since one of its contracts was properly enjoined and a recovery had against one of the defendants in that suit.

**Equities of defendants cannot be determined.**

(10)   There having been no trial on the merits, the equities alleged in the answer in favor of defendants as against the school district on account of its relation to them as large taxpayers cannot be determined.

**Items of damages to be passed on first by trial court.**

(11)   Nor should questions be now decided as to what items may

be included in recoverable damages, which have not been presented or passed upon by the trial court.

## AFTER REARGUMENT.

November 5, 1926.

**Under section 2058 taxpayers may not enjoin performance of contracts with school district.**

12. As section 2058, G. S. 1913, expressly makes every officer of a school district, who participates in making a contract in its behalf, individually liable for performance of the same when funds to meet such contract are not available but does not make the contract void, except so far as it imposes an obligation on the district, it follows that contractors are legally and morally entitled to perform their contracts and, if any contract fails to impose an obligation on the district, taxpayers are not harmed and have no standing in court to restrain performance. [Reporter.]

**School district's consent to performance of contracts shown by its conduct.**

13. By its acts the school district had consented to contractors entering on the land and proceeding to perform their contracts irrespective of whether they had been let without sufficient funds provided to meet them. [Reporter.]

**Actual damages of contractors not subject to superior equities of defendants.**

14. As the record now stands the mining companies are not in position to invoke superior equities against the actual damages the contractors sustained because of the temporary injunction. [Reporter.]

**New trial granted.**

15. Court erred in denying a new trial. [Reporter.]

Appeal and Error, 3 C. J. p. 689 n. 41; p. 696 n. 61; 4 C. J. p. 655 n. 14 New; p. 1289 n. 99; p. 1295 n. 72 New; p. 1299 n. 57 New, 58.

Bonds, 9 C. J. p. 85 n. 42 New.

Estoppel, 21 C. J. p. 1231 n. 85 New.

Injunction, 32 C. J. p. 310 n. 9; p. 315 n. 64, 66; p. 438 n. 32, 42; p. 452 n. 22; p. 453 n. 27; p. 456 n. 78 New; p. 462 n. 15 New; p. 472 n. 64; p. 473 n. 65.

Judgments, 34 C. J. p. 922 n. 82 New.
Undertakings, 39 Cyc. p. 680 n. 53 New.
Schools and School Districts, 35 Cyc. p. 957 n. 49 New; p. 1050 n. 2.

Action on two undertakings. One was given to secure a preliminary injunction in an action in the case of Oliver Iron Mining Co. et al. v. Independent School District No. 35 et al. pending in St. Louis county. The other was given by way of supersedeas by the plaintiffs in that action on appeal to this court, the report whereof is given in 155 Minn. 400. The action was dismissed by the court before the conclusion of the plaintiffs' testimony. The plaintiffs appeal from an order, Hughes, J., denying their motion for a new trial. Reversed.

*Gunderson & Leach, H. V. Mercer, Joseph E. Austin, A. R. Folsom, Archer & Rosemeier* and *Thad. S. Bean,* for appellants.

*Washburn, Bailey & Mitchell,* for respondents.

HOLT, J.

Action upon two undertakings; the one given by defendants conditioned to pay plaintiffs any damages sustained by them if a preliminary injunction, procured in the suit brought by the defendants herein against the plaintiffs herein, was finally dissolved; and the other, a supersedeas given on appeal to this court, the defendants herein as plaintiffs in said action having been defeated in the court below. The appeal was unsuccessful and this action resulted. Oliver I. Min. Co. v. Independent School Dist. 155 Minn. 400, 193 N. W. 949. The court below ruled that plaintiffs herein were not entitled to damages and dismissed the action on the merits without findings. They appeal from the order denying their motion for findings or a new trial.

The following extract from the memorandum accompanying the order of the learned trial court shows the reasons for the decision:

"The plaintiffs were finally defeated in their action for an injunction on two grounds as I understand it: 1. That the power was in the electors to ratify the action of the board and that such ratification was effectual, and that there was no limitation upon the

power of the electors as to the amount of money that could be raised for the building of schoolhouses and the purchasing of school sites. And 2. That the plaintiffs were guilty of such laches as would prevent them from recovering in the case. * * * When the present action had been partly tried * * * the court reached the conclusion that, no matter what the evidence showed * * * in the instant case, there ought not to be any recovery by reason of the fact that owing to the manner in which the cost-plus contract had been let by the School District to the National Contracting Company, the attempt to sell the bonds through a fiscal agency agreement, which was in fact an arrangement to sell for less than par and accrued interest, and the fact that the school board was letting contracts hundreds of thousands of dollars above any authorization from the electors and above * * * any money in the treasury to pay for the same, and the fact that the position of the parties was changed after the giving of the original stipulation by the ratification election, and the further fact that the law with reference to the authority of the electors to authorize such expense was very doubtful, that it would be inequitable to permit the plaintiffs in the instant case to recover any damages."

Judge Hughes further stated that the school district was constantly letting contracts to different plaintiffs herein without authority and without money to pay with and no one could tell where the end would be, had not the injunction suit been brought, and concludes that if under those circumstances taxpayers, though guilty of laches, resort to injunction they should not be mulcted in damages, and that plaintiffs are not in with clean hands before a court of equity.

[1] As we understand respondents it is conceded that the right of a recovery is grounded on contract obligations evidenced by the two bonds mentioned but that it was necessary to bring the suit in equity solely because of the propriety of avoiding a multiplicity of actions. In other words the suit is properly brought in equity to enforce legal obligations. It follows that all equitable defenses available in an action at law, but none other, may be interposed.

Nor do we take it to be denied that matters determined in the injunction suit cannot be relitigated herein. Defendants herein cannot "go behind the decree in the case in which their bonds were given. The law and the facts of that case, as settled by the court, are conclusive of their rights in this proceeding. They cannot be permitted to raise any question as to either." Oelrichs v. Spain, 15 Wall. 211, 21 L. ed. 43. To the same effect is Pelkey v. Nat. Surety Co. 143 Minn. 176, 173 N. W. 435; Landis v. Wolf, 206 Ill. 392, 69 N. E. 103; Yale v. Baum, 70 Miss. 225, 11 South. 879; Revell v. Smith, 25 Okla. 508, 106 Pac. 863; Fullerton v. Pool, 9 Wyo. 9, 59 Pac. 431.

The court below seems to have been of the opinion that plaintiffs had pursued such reckless and irregular conduct in disregard of defendants' rights as taxpayers that there was good cause for the injunction sought, and hence damages suffered, though covered by their undertakings, may be withheld in the discretion of the court. The strongest support for this position in any case cited or found is the argument in Russell v. Farley, 105 U. S. 433, 26 L. ed. 1060, but the decision is not finally placed upon the basis of discretion, but upon the merits as revealed by the record. The facts are wholly dissimilar from those here presented. The suit in which that injunction issued and the bond was given involved a quantity of railroad iron and the final decree awarded part thereof to the plaintiff Farley and part to the defendant, and "adjudged that neither the plaintiff nor the defendant Russell is entitled to costs or damages herein." Upon the appeal from the decree it was contended that the court below had no power to decree that Russell was not entitled to damages, thereby precluding him from an action on the bond; and, if it had the power to decree on the subject of damages, it was error to deny them. It is to be observed that there was an adjudication as to damages in the injunction suit, not so in the injunction suit herein, for the findings in the latter expressly state that no issue except the one as to the validity of the contracts involved was litigated or decided.

In the Russell case after giving a history of the chancery practice, showing that the requiring of security as a condition for issuing a temporary injunction was discretionary, the court says:

"Since the discretion of imposing terms upon the party, as a condition of granting or withholding an injunction, is an inherent power of the court, exercised for the purpose of effecting justice between the parties, it would seem to 'follow that, in the absence of an imperative statute to the contrary, the court should have the power to mitigate the terms imposed, or to relieve from them altogether, whenever in the course of the proceedings it appears that it would be inequitable or oppressive to continue them. Besides, the power to impose a condition implies the power to relieve from it * * * at the final hearing, it may manifestly appear * * * that the suit has been fairly and honestly pursued or defended by the party who was required to enter into the undertaking, and that it would be inequitable to subject him to any other liability than that which the law imposes in ordinary cases. In such a case it would be a perversion, rather than a furtherance, of justice to deny to the court the power to supersede the stipulation imposed."

The court concluded that the circuit court had the power to determine whether or not damages were recoverable in the suit, and held that on the threshold of the inquiry as to the merits of the decision below the court was met by the prominent fact that the injunction had never been entirely dissolved, and it had never been decided that the complainant was not entitled to it, at least for a portion of the iron claimed by Russell. In the opinion is also found this significant language:

"When the court sees no just cause for superseding or suspending the effect of an injunction bond, or undertaking, it should be enforced in pursuance of its terms; and the party for whose benefit it was given will be entitled to an assessment of damages."

No other case to which our attention has been called puts the matter stronger for respondent than the above. Coosaw Min. Co. v. Carolina Min. Co. (C. C.) 75 F. 860, qualifies the right to deny

recovery on the injunction bond to cases in which it does not appear that the ones enjoined were put to any disadvantage by reason thereof.

[2]    It is true that in the former action the court could have ascertained the damages.  Hayden v. Keith, 32 Minn. 277, 20 N. W. 195. But, not having so done, the sole remedy is on the undertakings. As already indicated, these are contracts to be construed in the light of the statutes under which they were given.  As well stated by Justice Harlan in his dissenting opinion in Tullock v. Mulvane, 184 U. S. 497, 22 Sup. Ct. 372, 46 L. ed. 657, this undertaking is a contract.

"In the absence of a statute fixing the measure of damages or limiting the recovery, we think the bond should be viewed in the light of an independent contract, and is to be interpreted by the general principles of the common law."

Recovery on an undertaking is not made dependent by our statute upon the court's discretion.  However, if there be any equitable defenses by way of estoppel or otherwise, it was for defendants to plead and prove them herein, unless the record in the injunction suit plainly disclosed the existence of such defenses.  No finding in the injunction suit, in view of the finding above referred to, tends to establish a defense to the undertakings.  No findings were made in the present action.  The whole record in the injunction suit was received in evidence, but even with that in, we are convinced, in view of the fact that only the validity of the contracts was litigated, that it cannot truthfully be said that such equities appear on the face of this record that the plaintiffs' contractors and subcontractors are not entitled to the actual damages sustained from being enjoined from proceeding with their contracts.

We may here remark that we see no good reason for the admission in evidence of the record in Williams v. Nat. Cont. Co. 160 Minn. 293, 199 N. W. 919, not involving a contract of the sort involved in the injunction suit as to the plaintiffs' contractors and subcontractors herein, nor the record in the commission suit for the sale of the bonds issued by the district for the building project.

[3]    We may also suggest that the discretion originally exercised by courts of equity in granting temporary injunctions without protecting the party enjoined against loss, has been circumscribed by statute. After hearing is had, the law requires the bond to be filed before the writ issues (G. S. 1923, § 9388). The amount of the bond above $250 still rests within the discretion of the court. But it is clear that such discretion must be exercised with a view to protect the one enjoined against the probable loss that he may sustain, if it be finally determined that the injunction should not have issued. We are therefore of the opinion that under our statute the defenses to an action upon the preliminary injunction bond are such equities and defenses only as ordinarily are available in actions brought on contract.

[4]    Granting however that the trial court may, in an injunction suit, determine whether or not the defendant should have damages, it does occur to us that, after the court has determined that the plaintiff was not entitled to the injunction, the statute governing appeals and the bond required on appeal come into operation. As to that bond the trial court has no discretion to withhold recovery for the actual damages suffered by the prevailing party whose hands were tied by the supersedeas. There is no good reason for holding that after a trial court, upon a trial on the merits, has determined that there was no ground for the injunction, still during the period of an unsuccessful appeal the actual loss sustained from the delay is not recoverable under the supersedeas bond. We think that as to damages coming within the terms of the undertaking on the appeal, the only defenses should be such equitable defenses as are ordinarily available in actions on contractual obligations. There is to be found no condition either in the statute (G. S. 1923, § 9500), or in the supersedeas undertaking herein, making recovery depend upon whether or not the questions of law or fact on the appeal were doubtful· or clear.

[5]    Respondents contend that they were defeated on the injunction suit solely on the issue of ratification of the contracts asserted by the supplemental answer, and that the undertaking for the preliminary injunction having been given to take effect as of

January 14, 1922, when such injunction issued (though executed after the ratification election of January 30, 1922), there was good cause for granting the writ in the first instance and therefore no recovery can be had. We think this position is not justified. The defenses in the injunction suit were two, namely, that the contracts involved were valid so far as any attack could come from these defendants because of their laches and that they were valid because ratified by the electors. Findings were made both on laches and ratification in favor of the validity of the contracts.

Where two distinct issues of fact are raised and litigated and appropriate findings made, there is no room for saying that the one should be disregarded as immaterial and the legal consequences drawn therefrom become a dictum, merely because the finding on the other issue was sufficient to sustain the conclusion of law. On the appeal in the injunction suit, 155 Minn. 400, 193 N. W. 949, after stating that the finding of laches challenged by the appeal was amply sustained, we held the result of such finding "necessarily [to] be that plaintiffs [the defendants herein] were not entitled to an injunction, even had there been no ratification by electors." The reasons are fully given on page 411 of the opinion why that was true especially as to the contractors. We therefore conclude that, when the preliminary injunction was granted on condition that the undertaking in suit should be given, the obligors were not then or since entitled to the writ, and that it was so decreed on the merits, outside and apart from the ratification election of January 30, 1922. Hence authorities cited by respondents are not in point, such as Scott v. Frank, 121 Iowa, 218, 94 N. W. 764; Jewel Tea Co. v. Stewart, 142 Iowa, 353, 120 N. W. 962; N. Y. & L. B. R. Co. v. Dennis, 40 N. J. L. 340; Palmer v. Foley, 71 N. Y. 106; Apollinaris Co. v. Venable, 136 N. Y. 46, 32 N. E. 555; Yarwood v. Cedar Canyon C. Min. Co. 37 Wash. 56, 79 Pac. 483; Puget Sound Harbor No. 16 v. Aetna A. & L. Co. 97 Wash. 413, 166 Pac. 785; American Sur. Co. v. Jones, 140 C. C. A. 183, 224 F. 673. In none of those cases did it turn out that a defense to the preliminary injunction which was here pleaded as existing when the writ issued was litigated and found true.

[6]   Respondents insist that plaintiffs are estopped by what occurred in the trial of the injunction suit to claim damages under the undertaking in existence at that time.   Certainly nothing could be claimed then to have taken place which would estop them from enforcing the supersedeas undertaking given thereafter.   Was there as to the preliminary injunction undertaking?

The incident was this:  A day or so before the trial, defendants had served and filed a supplemental answer setting up the additional defense that on January 30, 1922, long after the answer had been served, the electors had duly ratified the contracts which were sought to be enjoined.   In introducing testimony touching the purpose and result of the election, objection was made as to what transpired after suit was begun.   During the resulting discussion the court put the question to Mr. Mercer, the spokesman for the other attorneys for the defendants in the suit, in regard to what effect such subsequent events might have upon the liability of the obligors in the undertaking:

"What do you say to the proposition that in case the plaintiffs were right to start with, how are you going to save them from that if they should not prevail by reason then of these proceedings that you are going to try to show?"

Mr. Mercer:  "That would be a perfect defense so far as their bond is concerned."

The Court:  "That is, it would be a perfect action against them?"

Mr. Mercer:  "No, no, a perfect defense against the bond."

The Court:  "They have given bond to protect everybody, including the National Contracting Company.  Suppose the National Contracting Company has been damaged $200,000 by reason of that injunction here, how are the plaintiffs going to get away from it if suit is brought?"

Mr. Mercer:  "That is a different question."

The evidence was then received, without anything else in the way of admissions of fact or law, subject to a motion to strike, which motion was renewed both as to the evidence and the supplemental answer at the close of the trial.  Clearly the obligors in the under-

taking did not assume that anything had been said on which they could rely as a defense if sued upon the instrument. The motion to strike was evidently denied, for it was found that a valid election was held as alleged in that answer. It is impossible to find any estoppel in the answers of the attorney to the queries of the court as to what the legal effect of the evidence offered would have upon a possible future lawsuit.

It has never been understood that an off-hand opinion on a legal question given by one of the attorneys of a party at the invitation of the court should bind the client in any other case. It was not the admission of a fact at issue in the case or even involved. It is doubtful whether the attorney and the court understood one another and surely the last quoted answer of Mr. Mercer should set at rest any contention that as to the contractors there could be any basis whatever for estoppel in the incident noted. Moreover the objection to the supplemental answer stressed at the trial and on the appeal of the injunction suit was that the contracts were void in the primary sense, hence could not be ratified and therefore the ratification set up in the supplemental answer was not a defense at all. Indeed the written motion to strike was "on the ground that the allegations therein contained are irrelevant and immaterial and state no defense to the cause of action set up in the complaint herein." The record shows the motion was denied (folios 608-610, record former appeal). It would appear that a refusal to permit such pleading in the case would have come near being an abuse of discretion. No estoppel is made to appear and we pass the many cases cited by respondent on estoppel as not in point.

[7] There can be no question that after the ratification election the contracts, work on which was stayed, were valid and as to the contractors we find no equities appearing in the record of the injunction suit that should deprive them of the actual damages sustained. But it is contended the undertaking executed by defendants to take effect as of the time the preliminary injunction issued does not cover damages sustained after the ratification election. The undertaking was exacted to stay performance of the contracts. All

the parties deemed it to have that effect. It would have been idle to have applied for a dissolution of the injunction after the election, for even after the trial the court, presumably at the instance of the plaintiffs, in that suit kept the preliminary injunction in force until the supersedeas could be filed. Again bonds for preliminary injunctions must be given with the understanding that it protects the party enjoined even though the issues in the suit may undergo a change by amendment of the pleadings or by such supplemental pleadings as may be permissible by the usual practice. Houghton v. Meyer, 208 U. S. 149, 28 Sup. Ct. 234, 52 L. ed. 432, is instructive on the point that a bond exacted on granting a restraining order, but before a hearing on the propriety of issuing a temporary injunction, does protect until the trial court files a decision on the merits.

[8] We are agreed that neither from the findings nor the whole record in the injunction suit, including the decision in this court, can the defendants herein claim any equitable defense to the actual damages the contractors or subcontractors may have sustained through being enjoined from proceeding with their contracts after the ratification election of January 30, 1922. But the contention is made that during the 16 days prior thereto there should be no recovery inasmuch as the contracts, the performance of which the defendants interrupted, were not then legal and defendants were only prevented from so asserting in the injunction suit because of their own laches, and that to permit a recovery for that period would be to transform defendants' laches into a cause of action for the contractors. We do not consider the argument sound. In no sense is the cause of action herein predicated upon defendants' laches which availed the plaintiffs herein as a defense, nor is it even rested upon the validity of the contracts with the school district, but upon the express terms of the undertaking given by defendants. They saw fit to go into court and with its strong arm interrupt the work of the plaintiffs herein because of the alleged illegality of their contracts, saying if we do not establish our right to annul the contracts and to permanently stop work thereunder, we will pay you the damages you sustain by the interruption. The court found two grounds which defeated such right, one being the laches which exist-

ed when the suit was begun, and the other the validation of the contract by the voters 16 days later. Each ground was sufficient, and it follows that under the terms of the bond the obligors became liable for damages flowing from the interruption.

It seems the contracts were not in the sense illegal that the school district upon their completion could have insisted to pay only what the work was worth to it. Under the situation here present, where the contracts had been let to the lowest bidder upon proper notice, for an authorized improvement, and the only objection to the making of the same was that the district had not sufficient funds in sight to cover the cost, the district itself would be estopped equally with defendants to question the contracts for all purposes, the contractors having in good faith proceeded with the work until near completion, as was adjudicated in the injunction suit.

The case of Chatfield v. Iowa & Ark. L. Co. 88 Ark. 395, 114 S. W. 473, cited by respondents does not appear to be at all helpful, for the cause of action here is not founded either upon laches of defendants or upon the validity of plaintiffs' contracts, but upon a distinct contract, the undertaking. A breach of the condition thereof, namely, failure to obtain an adjudication annulling the contracts, made defendants herein by the express terms of their contract liable to the contractors, plaintiffs herein, for the damages suffered by them from the interruption of their work. They did not establish the right, and the court found they did not have the right when the action was begun. The undertaking contains no condition that it was to be operative only in case the contracts attacked were held valid. In fact and in law the plaintiffs in the injunction suit could not limit the defendants therein to any particular defense. Any defense was open to them, and if any defense asserted defeated the plaintiffs in that suit, it mattered not what it might be, the obligation to pay for the loss caused by the preliminary injunction attached by the very terms of the undertaking.

In view of a retrial it may be suggested that the school district may stand in a different position to defendants than do the contractors. There are indications of extravagance in the plans of the

buildings the district was constructing and also of recklessness and irregularity in not providing the means to pay for the contracts before letting the same. The school board must be held to know its duties and the financial status of the district. The ordinary contractor does not stop to question the authority of such an important body as this board to let contracts for needed and authorized buildings. The board owes to the taxpayers who must pay for school buildings the utmost good faith to see that the requirements of the law are followed in their erection. But even as to the district, we do not think it so clearly appeared from the record in the former case that no damages were recoverable under the undertaking that this action could be dismissed when it was, without an opportunity to place all its evidence before the court.

[9] One phase of claimed attorneys' fees may be disposed of. Respondent presents many cases where attorneys' fees were disallowed though the injunction was dissolved. Some of the cases are from Federal courts. It must be remembered that the practice in the Federal courts is not to allow such fees. The same rule obtains in many state courts. We see also a distinction between the right to recover attorneys' fees as damages and the right to recover the loss directly flowing from the preliminary injunction as damages covered by the undertaking. The attorneys' fees may properly be held allowable as costs of suit and within the discretion of the court. We therefore consider cases involving solely attorneys' fees of little value as bearing on the recovery of actual damages from the fact of the restraint. The rule in the courts which permits attorneys' fees to be recovered on the bond, as we do (Frost v. Jordan, 37 Minn. 544, 36 N. W. 713), is that if the same were not earned solely in securing the dissolution of the injunction they are not allowable. Lamb v. Shaw, 43 Minn. 507, 45 N. W. 1134; Pelkey v. National Sur. Co. 143 Minn. 176, 173 N. W. 435. Our rule is clearly stated in the Pelkey case. Thereunder the school district is not entitled to recover attorneys' fees. One contract involved in the injunction suit was adjudged void, and as to that the defendant herein prevailed. So that not only were they entitled to have the

parties to it enjoined, but they were granted further relief by recovering money for the district. We refer to the contract between the school district and its fiscal agent, the bank. So it seems, on all the authorities, the school district may not recover attorneys' .fees.

[10]   In the absence of a trial on the merits and proper findings it cannot now be determined whether as against the school district there is an equitable defense in the alleged fact that 95 per cent of the taxes received by the district come from defendants herein. This however and other matters alleged in the answer in diminution of damages and so-called counterclaims, are for defendants to prove and are not properly for decision now.

[11]   Upon this record we must refuse appellants' invitation to determine what items may be included in the damages, or upon what basis to be assessed. Those are matters to be first determined by the trial court.

We conclude that it was error to deny a new trial.

Order reversed.


STONE, J. (dissenting in part.)

To the extent about to be indicated, I cannot concur. We are dealing with contracts which for some time after they were made conferred no rights on anyone. They were invalid because in violation of positive law. Even if the good' faith of some of the contractors is beyond question, and although, as suggested by Mr. Justice Holt, public contractors do not inquire very carefully into the power of public officers with whom they deal, the absence of such inquiry does not help an action on the contract where the public officers have gone beyond their authority, as they did in this case.

Up to the time the contracts were ratified by the voters, they were concededly illegal. During that time, the contractors had no right to proceed with performance. It must follow that the interruption of performance during that period would not be attended by legal damage to the contractors. So there would be no liability to damage on the part of the one causing the interruption. That must

be so because the act, even though without justification, did not interfere with any right of the contractors.

The fact that those who caused the delay, the defendants here, were guilty of laches in asserting the illegality of the contracts, might deny them any remedy. It could not go farther and confer upon the contractors a right which they did not have otherwise. Laches acts negatively and in bar of a remedy. It never operates affirmatively to create a cause of action where none could exist otherwise. 21 C. J. 215. The application of the rule is illustrated by Chatfield v. Iowa & Ark. L. Co. 88 Ark. 395, 114 S. W. 473, where it was held that one not in possession of land could not aid his claim to the title by charging laches against his adversary who was in constructive possession.

So it should be held, I submit, that none of the contractors involved are entitled to recover for any loss flowing from the delay of their performance of the contracts in question during the period preceding the validation of those contracts by the election. The proposition is not that plaintiffs cannot recover damages. It is rather and only that their damages must be limited to those arising from the interruption and delay suffered under lawful contracts. There were no lawful contracts and in consequence no legal right to proceed with performance until the contracts were validated by the election. Hence my conclusion that there can be no recovery for any loss flowing from interruption and delay occurring before the election.

DIBELL, J.

I concur in the dissent.

AFTER REARGUMENT.

On November 5, 1926, the following opinion was filed:

HOLT, J.

In an attempt to reconcile the divergent views of the members of the court reargument was granted upon two propositions, the

main one being framed thus: The contracts between the school district and the contractors being declared by statute void, could the interruption thereof give rise to any damages under the injunction bond? Appellants deny that the contracts are void. It must be conceded that, under the facts thus far established, the wording of the above issue for reargument was not the best. Over 50 contracts are involved. Respondents admitted that some of these are in every respect valid. It has never been determined that a single one comes within the ban of G. S. 1923, §§ 2058, 2070, the only enactment which could be invoked against their validity. The court in the injunction suit did find the date upon which each contract was let and the amount thereof, and then this:

"The school board of said independent school district during the years 1920 and 1921 at many times awarded contracts for the erection of school houses far in excess of the moneys on hand in the building fund and in all funds, such excess amounting at times to hundreds of thousands of dollars and an amount which would require a levy of much more than eight mills upon the dollar of the taxable property of the district to pay." [155 Minn. 400, 404, 193 N. W. 949.]

This is far from holding, even by implication, any contract so let void; for it must be remembered that the attack of the mining companies upon the contracts centered on the proposition that G. S. 1913, § 2917 (G. S. 1923, § 3013), limited the indebtedness which could be incurred for school buildings by this restriction upon the power to raise the funds needed:

"In independent districts no tax in excess of eight mills on the dollar shall be levied for the purpose of school sites and the erection of school houses."

But the learned trial court took the view that this was a restriction upon the power of the school board in such district to levy a tax for that purpose, and not upon the power of the electors to incur an indebtedness in the erection of buildings which might authorize and require the school board to levy a much higher tax

to meet the obligations created by the voters directly. In this the court below was sustained (Oliver I. M. Co. v. Ind. School Distr. 155 Minn. 400, 193 N. W. 949); and we held that no statutory limit exists beyond which the electors may not go in financing the erection of needed school buildings.

[12] But assuming, as was done in the above decision, that the school board let some of the contracts involved when inhibited by § 2058, are those contracts void so that no legal damages can be claimed for a wrongful interruption of their performance? The statute in question reads:

"It shall be unlawful for the authorities of any county, town, city, village, or school district, unless expressly authorized by law, to contract any debt or incur any pecuniary liability for the payment of either the principal or the interest of which during the current or any subsequent years it shall be necessary to levy a rate of taxes higher than the maximum prescribed by law. Every such contract shall be null and void in regard to any obligation thereby sought to be imposed upon such corporation; but every officer, agent, or member thereof who participates in or authorizes the making of such contract shall be individually liable for its performance. Every such officer or agent who is present when such contract is made or authorized shall be deemed to participate in or authorize the making thereof, as the case may be, unless he enter or cause to be entered his dissent therefrom in the record of such corporation."

Only the action of the officers in creating an indebtedness, when to meet it funds are not available, is denounced, not the conduct of the creditor or the other party to the contract. In fact it is clearly apparent that the legislature intended to protect the rights of such other party. The contract itself is not declared null or void, except only insofar as an obligation is thereby sought to be imposed upon the school district. On the contrary, the statute expressly declares the same binding upon every member of the school board, making each one individually liable for its performance. It should follow that the contractors were legally and morally entitled to perform their several contracts. They could not be regarded as trespassers

or wrongdoers in so doing. And it cannot be held as a matter of law that legal damages do not result to them from an interference with their work. So long as the contracts were in performance of the construction of the buildings, as planned by the school district, the mining companies should not have had any standing in a court to restrain performance; for if any contract failed to impose a pecuniary obligation upon the district under § 2058, the companies, as taxpayers, were not harmed and had no cause for complaint.

[13] On the proposition that the contractors were rightfully pursuing work upon all the contracts, it must be remembered that the voters of the district had properly determined to construct these buildings. It is true that at first the cost was estimated at less than one-fourth of that ultimately authorized, but the evidence discloses that, after the building program had been fixed upon, construction cost increased about one-third. Nor does it appear that the ultimate cost was attempted to be estimated at first. The voters of the district had, by a state loan, by bond issues and by direct approval, indicated permission to the school board to expend for the purpose, in round numbers, $1,850,000 (this includes the taxes levied by the school board for the years 1920 and 1921, and the unexpended surplus in the general fund for these years and the one preceding which lawfully could be and was used for building operations), long prior to the injunction suit started. The plans for the buildings had been on exhibition in public places from the start, and there is no question but that by every move the school district had consented to the contractors going upon the land and proceeding with the construction, irrespective of whether some of the contracts were let without sufficient funds provided at the time to meet them. In no sense could any contractor be held a trespasser or wrongdoer in going on with the performance of his contract. Another case would be presented had not the electors directly authorized the erection of these buildings. The cases cited by respondents, where the parties were denied damages upon bond in injunction suits, are where the obligee was a trespasser or tortfeasor, or else where suit was brought for damages for an interruption of a contract illegal in

every aspect of the law; typical of these are East Tenn. Tel. Co. v. Anderson County Tel. Co. 115 Ky. 488, 74 S. W. 218; Tipton v. Jones, 77 Ind. 307.

[14]   As between the contractors and the mining companies the equities, upon the record as it now stands, appear to be with the former, and ordinary square dealing would require that the latter pay the damages which they stipulated and contracted to pay when the temporary injunction issued.   The companies were advised of the building plans from the start; they kept track of the contracts as they were awarded, and of the action of the electors in financing and authorizing expenditures.   They employed an office force of several competent persons to gather this information.   Whatever charge of extravagance may be made against the district or possibly against the architects, can in no wise reach any of these contractors who obtained their contracts upon competitive bids duly advertised for.   At the best, where there is competitive bidding the profits to the contractors are not large, and the interruption such as this is likely to cause injury and pecuniary loss.   The mining companies, with knowledge of all the facts, let these contractors go on for nearly two years, and then when the work on some of the contracts was within less than 10 per cent of completion and none less than half done, come into court not only to contest the right to receive pay for the work done, but urge the unconscionable proposition that the contractors should pay back all that they had been paid.

We think as the record now stands the mining companies are not in position to invoke superior equities against the actual damages the contractors sustained because of the temporary injunction. And as herein shown, at the time the restraining order was obtained on the stipulation above set out, no contract was by § 2058 void so that work thereon could be enjoined for the work was such as was authorized and the contractors were neither trespassers nor wrongdoers in doing it.

[15]   The conclusion reached in the opinion already filed is adhered to.

STONE, J. (dissenting.)

Our reinvestigation of the facts of this case has convinced me that originally I indulged to too great an extent the assumption that the contracts when made, and until validated by the election, were invalid. But I still think that the issue of invalidity remains for original determination in the district court and that it should be determined with respect to each contract before the case will be in shape for final decision.

My present concern is not with the final issue so much as it is with the construction of sec. 2058, G. S. 1913. Its first sentence in unequivocal language denounces as "unlawful" any contract contravening its terms. The next sentence starts with the mandate that every such contract shall be invalid "in regard to any obligation thereby sought to be imposed on such corporation." It must follow that these contracts, so far as they violated the statute, were wholly void until validated by the voters of the district. There being no obligation upon it, the corporation or anybody proceeding in its right could have stopped further performance.

The succeeding and final provision imposes liability upon the municipal officers and agents participating in or authorizing the making of an invalid contract. It declares them individually liable only for its "performance." There is no other effect than to impose such liability in the event, and only in the event, that the contractors have actually proceeded with performance in good faith. The result is that if such a contract is fully performed, notwithstanding its invalidity, the corporate officers who authorized it are individually liable to the contractors on the contract or, in the event of partial performance, completion of the contract being prevented by any cause (as a taxpayer's suit), such officers and agents are liable for damages as for a breach of the contract.

In other words, the purpose of the statute is to apply to the situation the rule of agency which makes individually liable to a third party an agent who has induced him to contract upon the faith of the agent's possession of an authority which in fact he did not possess. In such a case the principal is not bound and he may pre-

vent or stop performance of the contract without liability to himself. If the contract is fully performed, the agent is individually liable, or, if its performance is prevented, he is liable for the resulting damage.

Any other construction makes the statute result in a degree of absurdity and contradiction which elementary rules of construction bid us to avoid if at all possible. Can it be that the legislature has declared such a contract unlawful and has expressly prohibited a municipality from entering into it and yet has said that, notwithstanding such prohibition, the contractor has a legal right to proceed with its performance? Can it be that the legislature intended to say that anybody has a legal right to proceed with any contract so clearly unlawful? Can it be that, where such an unlawful contract is once made, the municipality itself is powerless to stop its performance as against the contractors who wish to proceed and resort finally only to the statutory liability of the law violating officials? Can it be that in such a case a succeeding administration must stand by helplessly while the real estate of the municipality is wrongfully taken and withheld from its possession and for the time being unlawfully converted by the contractors to their own use?

Because the construction put upon the statute by my brethern of the majority answers all such questions in the affirmative, I cannot join in its adoption. The results are too weird and distant from the known purposes of such statutes. It is much more reasonable to say that the legislative intention was, while denouncing such contracts as invalid, to apply the usual rule of agency which makes an agent liable to one who in good faith has relied upon his assumption of an authority which in fact he did not possess.

Returning to the grounds of my original dissent and reversing the order in which they were then treated, the first is that the laches of a defendant cannot operate affirmatively to create a cause of action where none could exist otherwise. I do not understand that, as a general principle of equity jurisprudence, there is any dissent therefrom and so pass it without further comment.

The remaining proposition, and the main one which gave rise to the original divergence of opinion, is that an interruption in a peaceful

and legal manner of the performance of a contract, *unlawful in its inception and remaining so at the moment of the interruption,* cannot give rise to legal damage. Opposition to that proposition has disappeared under the reason of the situation as illustrated and applied in such cases as East Tenn. Tele. Co. v. Anderson County Tele. Co. 115 Ky. 488, 74 S. W. 218. That case is especially valuable for its review of the authorities. The pith of them is expressed in this quotation from Macey v. Titcombe, 19 Ind. 135, 137: "The plaintiff in a suit on an injunction bond must show a legal contract to have been enjoined." The Kentucky court went on to say that the gist of an action such as this "is damages sustained by being deprived of some right."

So far as any of the contracts now involved were invalid (and we cannot say now which were good and which bad at that time), the thing which was prevented was the performance of a contract which was *prohibited by positive law* upon broad and obvious grounds of public policy. There is no legal right to proceed with the performance of such a contract and hence no legal damages can arise from its interruption while it remains illegal.

DIBELL, J. (dissenting.)

I am satisfied with the views expressed in the dissent on the former hearing.