SHELTON JACKSON, Appellee, v. CITY OF CRESTON, Appellant
(and 15 other cases).

JUNE 26, 1928.

*Richard Brown* and *Miller, Kelly, Shuttleworth & McManus,* for appellants.

*Kenneth H. Davenport, George A. Johnston, E. L. Carroll,*
and *J. C. Pryor,* for appellees.

STEVENS, C. J.—I.  Fifteen property owners in the city of

Creston appealed to the district court from the action of the city council in levying special assessments against their property for benefits resulting from certain alleged street improvements. Eight other property owners instituted an independent action jointly in equity to enjoin the collection of the assessments levied, and to prevent the execution and sale of improvement bonds or the delivery thereof to the contractor, and to quiet title to other property against the levy. The several actions were consolidated for submission to this court.

A somewhat extended recital of the proceedings of the city council is indispensable to a clear understanding and decision of the vital questions presented by the appeal. On July 27, 1925, the Horrabin Paving Company submitted a proposal in writing to the city council of the city of Creston, to furnish and apply all oils necessary for oiling certain streets in said city, according to specifications on file in the clerk's office, for the sum of 50 cents per square yard, to furnish and lay an asphaltic mixture to repair all holes and depressions in the surface of the street for $1.40 per hundred pounds, including the preparation of the street to receive the oil. The proposal also included the spreading of hot dry sand over the "flushcoated" surface of the street, and to roll the same into the pavement without additional charge, if deemed desirable by the city engineer. On the same day, the city council, by resolution which declared that it was necessary, in order to preserve the paving of certain streets, that the improvements described in said resolution by oiling be made, provided as follows:

"Whereas, the most satisfactory method of oiling said streets is by method of flushcoating same with liquid reflushcoating bituminous oils according to specifications now under consideration before this council and said specifications are hereby approved and made part of this resolution by reference."

The resolution further described the streets to be improved, accepted the proposal of the Horrabin Paving Company, and provided that a portion of the cost of the improvement be assessed to abutting and adjacent property, as allowed by law. On the following day, the mayor and city clerk entered into four separate contracts in writing on behalf of the city with the Hor-

rabin Paving Company, to oil the streets as provided in the specifications on file in the clerk's office and in the resolution of the council heretofore referred to. The contracts were identical in form and substance, except that each referred to a different street or portion thereof to be improved.

After the completion of the improvement, the city council, by resolution, approved and accepted the same, and directed the city clerk to prepare and file in his office, for public inspection, a plat and schedule showing the separate lots and parcels of ground, or specified portions thereof, subject to such improvement, and otherwise complying with the law.

In due time, the city engineer prepared and filed the required plat and schedule, together with a certificate showing the total cost of the improvement and the portion thereof to be taxed to property owners and the city, respectively. The plat and schedule was later approved by the city council, and notice of the proposed assessment given to property owners, as required by law.

Objections, based upon various informalities and irregularities on the part of the council, which it was claimed rendered its proceedings wholly void, were filed by appellees. The objections were overruled, and the entire improvement approved by the city council, and the assessments for benefits levied against the abutting and adjacent property.

Pertinent provisions of the statute (Code of 1924) authorizing the improvement of streets by oiling are as follows:

"Sec. 5975. Cities shall have power: 1. To improve any street by grading, parking, curbing, paving, oiling [chloriding], graveling, macadamizing, or guttering the same or any part thereof, or by constructing electric light fixtures along same, and to repair such improvements. * * *"

"Sec. 5978. The cost of preparing a street to receive oil [or chloride] shall be paid by the city, except that portion between the rails of any railway or street railway, and one foot outside thereof."

"Sec. 6002. The city may oil [or chloride] the streets without letting a contract therefor."

"Sec. 6003. All contracts for the construction or repair of street improvements (except graveling, oiling [chloriding], or repairs other than reconstruction or resurfacing) or sewers, shall

contain a provision obligating the contractor and his bondsmen from the time of acceptance by the city to keep in good repair such street improvement for not less than four years or ·such sewer for not less than two years.''·

''Sec. 6024. Upon the completion of the oiling [or chloriding] of a street, the officer designated by the council to have charge thereof shall, within thirty days, file with the clerk a statement of the amount due, if the work was done by contract; or if done by the municipality, an itemized, verified statement of expenditures for materials and labor used in making such improvement.''

''Sec. 6026. After filing the plat and schedule for street improvements or sewers, or the report of cost of oiling streets, the council shall give notice by two publications in each of two newspapers published in the city, if there be that number, otherwise in one, and by handbills posted in conspicuous places along the line of such street improvement or sewer; but if no such newspaper is published within the limits of such city, then such notice shall be given by posting copies thereof in three public places within its limits. Said notice shall state that said plat and schedule or report are on file in the office of the clerk, and that within twenty days after the first publication all objections thereto, or to the prior proceedings, on account of errors, irregularities, or inequalities, must be made in writing and filed with the clerk.''

''Sec. 6032. * * * The cost of oiling [or chloriding] the streets may not be paid in installments.''

The interpolation of the words ''or chloride'' and ''chloriding'' in brackets in the foregoing statutes is to indicate the changes made therein by Chapter 152, Laws of the Forty-second General Assembly. It will be observed that the letting of a contract for oiling streets is, by Section 6002, made unnecessary.

Although Section 5975 of the Code, which confers power upon cities to improve streets by curbing, paving, etc., includes oiling, and, as amended by the forty-second general assembly, chloriding, Section 5991 provides that:

''When the council shall deem it necessary to construct, reconstruct, or resurface any street improvement * * * it shall, in a proposed resolution, declare such necessity, stating the kinds

of material proposed to be used and method of construction, whether private property will be assessed, and, in case of sewers, the kinds and size, and what adjacent property is proposed to be assessed therefor, and in both cases designate the location and terminal points thereof. That the plat and schedule are on file in the office of·the clerk shall be stated in the resolution.''

Contracts for the construction or repair of street improvements ''* * * shall be let in the name of the city to the lowest bidder by sealed proposals, upon giving notice by two publications in a newspaper published in said city, * * *'' Section 6004, Code of 1924.

No resolution of necessity was passed by the council, and, as already indicated, the several contracts for the improvement of the respective streets described therein were entered into without competitive bidding.

Among the numerous objections urged by the property owners to the proposed assessment were that the surface treatment given the paving is not oiling, as contemplated by the statute; that no resolution of necessity was adopted; that the improvement was not ordered by a three-fourths vote of the council, as required by law; that no maintenance bond was required; that no advertisement for bids was published, nor competitive bids received for the work; and other grounds of objection, based upon the failure of the city council to observe and follow various statutory provisions in the matter of making street improvements and assessing the cost thereof to abutting or adjacent property owners. We deem it unnecessary to discuss all of the objections urged to the special assessments and relied upon by counsel for appellee for affirmance.

It seems to us that the most pertinent and vital questions in the case are as to the character and nature of the improvement and the construction to be given Chapter 308 of the Code of 1924, relating to the improvement of streets by oiling.

Although apparently not offered in evidence, what purports to be a copy of the specifications provided for the improvement is set out in the petition in the injunction proceedings, and, in the absence of any denial of the accuracy thereof, we shall as-

sume that the·quoted portion is accurate. The specifications referred to provide that:

"There shall be then spread a priming coat of Bitulithic Liquid Reflushcoating Bitumen. This bitumen shall be of such consistency that when spread at atmospheric temperature it will penetrate into the surface of the pavement thus preparing it for application of the more viscous flushcoat composition. The Bitulithic Liquid Reflushcoating Bitumen shall be spread thinly as possible and shall be thoroughly broomed with wire brooms to insure its penetration into the old roadway surface mixture. The quantity required will vary with the roughness and porosity of the old surface.

"After the above course of Bitulithic Liquid Reflushcoating Bitumen has been allowed to dry for at least 30 minutes, that is, until the solvent has evaporated to such an extent that the bitumen is slightly sticky, but not oily to the touch, it shall be covered with a coat of Bitulithic Reflushcoating Composition which shall be spread uniformly at a temperature of 250 to 350 degrees F. By means of rubber squeegees or any other method that will insure uniformity."

The testimony of an engineer submitted by the appellees tended to show that the substance spread upon the surface of the pavement on the several streets, including the sand, made a coating from a quarter to one-half inch in thickness. The second coat was composed of a liquid asphalt, probably made by diluting asphalt petroleum oil. The testimony on behalf of the city disclosed that there were several bad holes and some cracks, denominated by one witness as ruts, in the pavement on Mills Street; that there were occasional holes on Union Street throughout its entire length; that some of the streets were full of bumps, and in places practically impassable; that the top surface was gone, and the pavement was taking water, the base full of holes; that the holes, cracks, and ruts were filled, brought to surface; and that, since the material in question was placed thereon, the surface of the streets has been evened up and leveled, so that they are in good condition for traffic. It thus appears without controversy that many defects in the pavement were repaired, and that the work done, in any event, included much more than is commonly understood by oiling.

The authority conferred upon cities by Section 5975 is to improve streets by grading, parking, curbing, paving, oiling, etc. Generally speaking, this statute obviously refers to the improvement of streets not previously curbed, paved, graveled, or macadamized. We think it clear that the authority conferred by Section 6002 is plenary, and that the oiling there referred to may be done by the city without receiving bids or letting a contract therefor. A custom quite general in small towns of oiling unpaved streets to allay the dust has existed for years in this state. Oil thus used is put on the street by a sprinkler, similar to an ordinary water sprinkler. The process is comparatively inexpensive. The very general use of oil for sprinkling unpaved streets to allay the dust has become known as oiling. In this sense, the word is given its usual and ordinary meaning. That the legislature had in mind this simple, inexpensive process is, we think, clearly indicated by the provisions of Section 6032 that the cost of oiling streets shall not be paid in installments, and of Section 6002 that the oiling may be done without letting a contract therefor. If it is done by the city without a contract, the officer designated by the council to have charge thereof is required to file an itemized verified statement of the expenses for material and labor used in the improvement. The addition of the word "chloride" or "chloriding" in the several sections referred to by the forty-second general assembly is significant, and, while subsequent to the improvement in question, nevertheless tends to throw light upon the process and purpose of putting oil on streets. The purpose of spreading chloride upon pavements or streets is to create moisture that will serve the same purpose as oil: that is, to allay the dust. It is not necessary that the court determine what steps are necessary to be taken by the city council desiring to improve its streets in the manner shown in this case. If the process was not oiling, within the meaning and contemplation of the statute, then clearly the proceedings were void. The only exception in the statute which permits the letting of contracts for any of the street improvements referred to in Section 5975 or the succeeding sections of Chapter 308 of the Code of 1924 without submitting the proposition to bids and letting the contract to the lowest responsible bidder, is that contained in Section 6002, relating to oiling. The whole tenor and purpose of the statute are in all other cases to require contracts

to be entered into by the city, by competitive bidding. Notice, which shall state the extent of work, quantity of materials, etc., as to all other improvements, must be given.

That the pavement was oiled and benefited by the improvement in question may be conceded. The expense of oiling, as the process is ordinarily done and understood, is nominal; whereas the cost of the present improvement was 50 cents per square yard. We are of the opinion that the repairs made upon the streets were not oiling, within the letter or spirit of the statute. It does not, therefore, come within the exception created by Section 6002. It follows that the letting of the contract by the city council without submitting its proposal to competitive bidders renders the same invalid, and constitutes such an irregularity or failure on the part thereof to comply with the statutes as to defeat the purpose to levy a portion of the cost of the improvement against abutting or adjacent property. *Lee v. City of Ames,* 199 Iowa 1342; *Miller v. City of Oelwein,* 155 Iowa 706; *Atkinson v. City of Webster City,* 177 Iowa 659; *Bennett v. City of Emmetsburg,* 138 Iowa 67; *Gjellefald v. Hunt,* 202 Iowa 212; *Manning v. City of Ames,* 192 Iowa 998.

What further steps not taken, if any, are required by law, we shall not determine. What we have said disposes of the appeal.

II. The decree of the court below enjoined the levying of assessments against the property of appellees in the injunction suit, and also enjoined the issuance of bonds. One of the points urged by appellants is that the decree is too broad. It will be observed that appellees brought the action in equity, as individual property owners, and make no claim as taxpayers. The relief they asked was that their property be relieved from all liability for either special assessments or the obligation of a bond issue. The decree is, in effect, no broader than the relief sought. Thus interpreted, its scope is no broader than it should be. Neither the Horrabin Paving Company nor the Johnson County Savings Bank, assignee, was a party to the injunction action. We are not at this time concerned with the relief, if any, to which they may be entitled in an action against the city upon some theory other than that involved in the adjudication.

For the reasons indicated, the decree in each of the several

cases consolidated below and in this court for trial and submission is—*Affirmed.*

All the justices concur.