### T. J. WAKELY v. COUNTY OF ST. LOUIS.[1]

August 7, 1931.

No. 28,404.

[1]Reported in 240 N. W. 103.

*Charles E. Adams*, for appellant.

*D. T. Collins*, for respondent.

*Baldwin, Baldwin, Holmes & Mayall*, amici curiae, filed a brief on behalf of the Taxpayers League of St. Louis County.

HILTON, J.

Plaintiff furnished from his land clay and sand for surfacing and repairing one of defendant county's roads. He filed a bill therefor with the county board, which disallowed it. Plaintiff appealed to the district court, and after trial plaintiff was granted recovery in the sum of $153.07 with interest and costs. Defendant moved in the alternative for amended findings of fact and conclusions of law in its favor or for a new trial. The court granted some slight amendments of the findings of fact and made one additional finding, but refused to make any change in its conclusions of law and denied the motion for a new trial.

On this appeal the only assignment of error is that the court erred in denying defendant's motion for a new trial for the reason that the conclusions of law are not sustained by the findings of fact as amended. They are:

"1. That during the year 1928 the plaintiff furnished from land owned by him 2,355 cubic yards of clay and sand which were used in surfacing and otherwise repairing a duly legalized and established county road located in St. Louis county.

"2. That said clay and sand were so furnished and used pursuant to an agreement made between the plaintiff and the duly elected, qualified, and acting county commissioner of said county elected from the commissioner's district in which said land and road were situated, pursuant to which agreement plaintiff agreed

to furnish said clay and sand and said county commissioner agreed that said county would pay therefor a stipulated price; that said plaintiff at the time of making said contract and of furnishing said clay and sand was an employe of said county as a county road foreman in said commissioner's district, and said commissioner assumed to act for said county in making said agreement; that said agreement was and is void; that said contract was made in good faith by plaintiff and said county commissioner, without fraud or collusion or purpose intentionally to evade or violate the law; and that said clay and sand cannot be practically restored to the possession of the plaintiff.

*　　*　　*　　*　　*

"7. That said county board at no time took any action by resolution or otherwise, authorizing the said surfacing and repairing work in which said clay and sand were used, and never authorized said county commissioner to enter into said agreement in behalf of the county or to carry out said work, and never by resolution or other official action in any manner ratified or confirmed said agreement."

Findings Nos. three, four, five, and six refer to the amount of benefits received, presentation of the claim to the county board, its disallowance thereof, and that it has not been paid.

We are here confronted with the sole question whether the findings of fact justify the conclusion of law that plaintiff was entitled to recover. The contract was not ultra vires. It was such as the county had full authority to make. It was invalid because not made by any resolution passed by the county board or agreement entered into between it as a whole acting as such and plaintiff.

Plaintiff was not a volunteer as was the situation in the case of Johnson v. Unorganized School Dist. 159 Minn. 226, 198 N. W. 463. The improvement here in which the material was used was county road work. The evidence indicates that the material was selected by officers or employes of the county; that the county engineer supervised the road work; and that the work was done, so far as appears, by men employed and paid by the county.

Defendant urges findings of fact Nos. two and seven. The substance of those findings is that the county board acting formally as a board did not authorize the purchase of this material and did not, acting as such board or formally, ratify the purchase. For all that appears in those findings, each individual member of the board may have had full knowledge of the furnishing of the material and its use. There is however no finding to that effect, and we do not consider it. The finding that the material was furnished to the county and used in good faith in a legitimate improvement by the county board and was of benefit to the county makes a prima facie case for recovery to the extent of the benefit received. There being nothing in the evidence to overcome the case so made, the conclusion of law is sustained thereby.

The numerous decisions of this court both before and after the case of First Nat. Bank v. Village of Goodhue, 120 Minn. 362, 139 N. W. 599, 43 L.R.A.(N.S.) 84, sustain recovery here. The rule as laid down in the cases is that where a municipal corporation receives money or property of another under and pursuant to a contract upon a subject within its corporate powers, and the contract was made and carried out in good faith and without purpose or intent to violate or evade the law, but is invalid because not entered into or ratified by the officers of the corporation having power to contract, or for some other failure to comply with statutory requirements, and money or property so received is retained by the corporation and devoted to a legitimate corporate purpose, resulting in benefits to the corporation, the one so furnishing the money or property may recover in quasi contract to the extent of the benefits received by the corporation. Laird Norton Yards v. City of Rochester, 117 Minn. 114, 134 N. W. 644, 41 L.R.A.(N.S.) 473; Fargo Foundry Co. v. Village of Callaway, 148 Minn. 273, 181 N. W. 584; Oliver I. Min. Co. v. School Dist. No. 35, 155 Minn. 400, 193 N. W. 949; Tousley v. Thompson, 166 Minn. 261, 207 N. W. 624; Frisch v. City of St. Charles, 167 Minn. 171, 208 N. W. 650; Lundin v. Township of Butternut Valley, 172 Minn. 259, 214 N. W. 888.

We have considered the points ably advanced in the briefs of appellant and of the amici curiae and the cases cited therein. Spe-

cific reference thereto we do not deem necessary. A reading of those cases indicates that they are readily distinguishable from this case.

Order affirmed.

WILSON, C. J. (dissenting).
I dissent.

LORING, J. (dissenting).

The Peterson road was constructed by contractors in 1924 or 1925. As left by the contractors it was not in satisfactory condition for travel. So far as this record shows the county engineer in charge of the road work in the district, without any authority whatever from the county board, in 1928 employed men to resurface the road with clay taken under agreement from plaintiff's land. The county board refused to pay for the clay. Had the board authorized the resurfacing and had its employes taken the clay under an unauthorized or illegal contract with plaintiff, I could agree with the majority; but where the project itself was wholly unauthorized, as here found by the trial court, I can see no basis for the doctrine of quasi contract. The county should not be compelled to pay for benefits which it did not want and did not authorize and which in the nature of things it cannot return.

In the cases cited by the majority the municipality either authorized the project which absorbed the plaintiff's money, property, or services, or as a municipality it accepted the benefits under conditions which gave it a choice as to whether it might accept or refuse them.

STONE, J. (dissenting).
I concur in the opinion of Mr. Justice Loring.

AFTER REARGUMENT.

On December 31, 1931, the following opinion was filed:

HILTON, J.
The following portion of the original opinion is eliminated:

"The finding that the material was furnished to the county and used in good faith in a legitimate improvement by the county board

and was of benefit to the county makes a prima facie case for recovery to the extent of the benefit received. There being nothing in the evidence to overcome the case so made, the conclusion of law is sustained thereby."

And the following is substituted therefor:

"The finding that the county commissioner and the plaintiff acted in good faith in the matter without fraud or collusion or purpose intentionally to evade or violate the law and that the county received the benefit therefrom makes out a prima facie case for recovery of the amount of actual benefits received. Good faith seems to us to be an important element in this kind of cases. If an officer or agent of a corporation or municipality knows that he has no authority to contract or act, then he is not acting in good faith in making the contract or doing the act. We cannot say that the case so made was conclusively overcome by other findings, and the conclusion of law is sustained by the findings.

"Just how the county board conducted its road repair operations is not clearly shown. St. Louis county covers a large area. It probably would not be practical for the entire board to go into every part of the county to inspect roads and decide upon each small repair or betterment to be made. The commissioner of the district affected is near at hand. It is the duty of the county to keep its roads in repair and in condition for public use. An improvement made in good faith by direction of a member of the board, resulting in benefit to the county, to the extent of such benefit, should be paid for. The county does not suffer any loss."

The result is not changed.

Order affirmed.

WILSON, C. J. (dissenting).

I dissent.

LORING, J. (dissenting).

I dissent. It is elementary that persons dealing with an involuntary public corporation which exercises governmental functions,

such as a county, are bound to know the legal limitations on its methods of doing business, Sandeen v. County of Ramsey, 109 Minn. 505, 508, 124 N. W. 243; that the management of a county's business is vested in the county board acting as a board; that individual members of that body acting independently have no authority to bind the county, Gardner v. Bd. of Co. Commrs. of Dakota County, 21 Minn. 33; State ex rel. Erb v. Johnson, 98 Minn. 17, 107 N. W. 404; and that an unauthorized act of an individual member must be ratified or adopted in some way by the board in order to make it binding upon the county, Schmidt v. County of Stearns, 34 Minn. 112, 24 N. W. 358; True v. Bd. of Co. Commrs. of Crow Wing County, 83 Minn. 293, 86 N. W. 102.

In the case at bar the only question before this court is whether the conclusion of law is supported by the findings of fact. There is no assignment of error or cross appeal which challenges the findings. Those findings are briefly that plaintiff's clay and sand were used in a county road pursuant to a void agreement between plaintiff and the county commissioner from the district in which plaintiff's land lay, who assumed in good faith but without authority to act for the county. There is a further finding that defendant benefited by the clay and sand but that it is not practicable to restore them to plaintiff.

If these findings stopped right here they would fall short of facts from which a contract of purchase could be implied, and in the light of the authorities they likewise fall short of facts sufficient to impose a quasi contractual liability upon the defendant. Neither do they show estoppel in any way. There would have to be a ratification or adoption by the county acting through the body which could have legally made the contract in the first place or the acceptance of benefits under circumstances which left defendant a choice whether it would accept. No such action or such circumstances are found by the court. On the contrary, we have a definite finding that the county board did not authorize the project or the contract "and never by resolution or other official action in any manner ratified or confirmed said agreement" and that the board

disallowed the claim. As stated above, we cannot go behind this finding. It is not attacked, and we are bound by it even if the evidence justified a different inference.

In the case of True v. Bd. of Co. Commrs. of Crow Wing County, 83 Minn. 293, 86 N. W. 102, 103, the sheriff engaged the plaintiff as counsel for the county to take charge of some tax cases in the absence of the county attorney. The chairman of the county board was present at the trial, which resulted in a substantial recovery by the county, but the board as such took no action in the matter. This court said [83 Minn. 294]:

"The board of county commissioners have by statute sole charge of the affairs of the county, * * *. The employment of counsel * * * rests solely with the county board. * * * plaintiff's employment by the sheriff was wholly unauthorized. No doubt, an unauthorized employment of this kind may be ratified by the board of county commissioners, but there was no ratification in this instance. The chairman of the board had no power to ratify or approve the act of the sheriff. The ratification of such act of employment could only be effected or made by some official action on the part of the board taken with reference thereto. Fouke v. Jackson, 84 Iowa, 616, 51 N. W. 71."

In the True case, 83 Minn. 293, 86 N. W. 102, it was suggested, as it is here, that the county received the benefits and retained the fruits of the litigation and was bound to compensate plaintiff for his services. There, as here, there was good faith in the sense that no fraud was perpetrated. The court further said [83 Minn. 295]:

"Whether there was an emergency justifying the sheriff in employing outside counsel is not before the court. It is a question with which we have nothing to do. Even if such had appeared, and the employment was apparently necessary and proper, whether the same should be ratified and approved was a matter resting wholly within the discretion of the county commissioners, which discretion is beyond the control of the courts. *There is nothing in the suggestion that the county, having received and retained the fruits of the litigation, was bound to compensate plaintiff for his*

*services. The county received the fruits of the litigation because it had no other alternative.* It was a tax and was paid into its treasury, and it was powerless to refuse to receive it, or to return it after having received it. For these reasons, the judgment of the court below was proper, and must be affirmed. See Horn v. City of St. Paul, 80 Minn. 369, 83 N. W. 388."

I cannot agree with the statement by the majority that good faith on the part of the county commissioner and the plaintiff, together with benefits to the county, makes out a prima facie case for recovery. The cases cited in the majority opinion do not so hold. In every one of them there is some element, in addition to benefits received, which appears to be controlling. In the case of First Nat. Bank v. Village of Goodhue, 120 Minn. 362, 139 N. W. 599, 43 L.R.A.(N.S.) 84, the money received from the bank was put into the village treasury and by the village council appropriated for legitimate purposes within its powers. In the Callaway case, 148 Minn. 273, 181 N. W. 584, the village used the repaired water tank and heating plant which was installed under the void contract. In the Rochester case, 117 Minn. 114, 134 N. W. 644, 41 L.R.A.(N.S.) 473, the coal was accepted and burned by the defendant. In the Oliver I. Min. Co. case, 155 Minn. 400, 193 N. W. 949, it was held that the voters in effect ratified the void contracts by subsequently authorizing the issuance of bonds to satisfy the obligations of those contracts; and it further appeared that the district as a corporation used the schoolhouses which were erected by the contractors. In Tousley v. Thompson, 166 Minn. 261, 207 N. W. 624, the Hennepin county board made a contract which this court held it was authorized to make. In Lundin v. Township of Butternut Valley, 172 Minn. 259, 214 N. W. 888, there was no acceptance of the bridge built under the unauthorized contract, and there was no recovery. In Frisch v. City of St. Charles, 167 Minn. 171, 208. N. W. 650, the city bought a lot from a member of the council, and a taxpayer's suit was brought for restitution of the price. This court held that it was entitled to such restitution unless there was a showing that the city had made improvements on the lot.

No Minnesota case has come to my attention in which the mere receipt of benefits by a public corporation, where the subject matter of the benefits was of such a character that the corporation had no choice but to retain them, was sufficient to bind it to pay for such benefits, even where the purchaser furnishing them did so in ignorance of the lack of authority possessed by the officer with whom he dealt.

Contrasted with the cases cited by the majority I find True v. Bd. of Co. Commrs. of Crow Wing County, 83 Minn. 293, 86 N. W. 102, and Young v. Board of Education, 54 Minn. 385, 55 N. W. 1112, 40 A. S. R. 340, in which the fact that defendants had no choice as to whether they would reject or retain the results of the void contracts was regarded as controlling. Cases outside this jurisdiction support the rule in True v. Bd. of Co. Commrs. of Crow Wing County, 83 Minn. 293, 86 N. W. 102. Worrell Mfg. Co. v. City of Ashland, 159 Ky. 656, 167 S. W. 922, 52 L.R.A.(N.S.) 880, and cases cited therein; Cross Tp. v. Wallace, 57 Okl. 726, 157 P. 898; Agawam Nat. Bank v. South Hadley, 128 Mass. 503. In the case of Kreatz v. St. Cloud School Dist. 79 Minn. 14, 18, 81 N. W. 533, 535, this court recognized the necessity of there being more than the mere receipt of benefits to bind the public corporation in cases where the benefits are of such a character that they cannot be returned. This court said [79 Minn. 18]:

"The work was of such notable character and continued for such length of time, and under such circumstances, as to raise the presumption that it was with the common consent of the district."

No such circumstances are found to exist here.

We find in some cases a reference to "the general obligation to do justice" as authorizing a recovery. The difficulty with that phrase as a definition or rule of human conduct is that it expresses an end to be sought rather than a means of attaining it. As a guide to conduct it affords little help. Justice in the abstract without rules for attaining it may depend largely upon the point of view. The rules of the common law, of equity, and of written law have been developed by generations of experience in seeking to

attain justice. To lay down definite and understandable rules is helpful to bench, bar, and general public; but to rely upon a generality such as "the general obligation to do justice" is to cast aside the accumulated wisdom of ages and to venture out upon an uncharted sea of conjecture.

Taxpayers have a right to have their money expended according to certain limitations and restrictions. In my judgment those limitations have been stretched far enough. I think the order should be reversed.

STONE, J. (dissenting).

Concurring in all that Mr. Justice Loring has said, I must yet ask leave to add the following.

Assuming it correct in result, upon what legal ground does the majority opinion base liability? Good faith is said to be "an important element." That, together with the receipt of benefit, is said to make out a prima facie case. What authority there is for such a conclusion is not indicated. My search has failed to disclose any. Hence my inability to concur.

"A plaintiff seeking to recover for services rendered without the consent of the defendant has the burden of taking himself out of the well-established rule that no one has a right to force himself upon another as his creditor." Keener, Quasi Contracts, 341.

The debtor in this case is a municipal corporation, acting through the county board. The latter is a creature of statute, with only the limited authority thereby conferred. Its annual expenditures of county funds must be budgeted, and disbursements for any purpose beyond the regular levies therefor are prohibited. G. S. 1923 (1 Mason, 1927) §§ 811-818. A county commissioner violating them by "contract, vote, or bargain" is guilty of a gross misdemeanor. § 819. Of what use are such prohibitions by legislatures if even the courts aid careless officials, unmindful of their duties but acting in good faith, to set them at naught? The result here, it seems to me, is in plain derogation both of the statutes in question and the wholesome public policy they declare. If the prec-

edent is to be followed, it may easily result that on the civil side a court must hold a county liable for the result of a "bargain," while on the criminal side it is convicting a county commissioner of gross misdemeanor for making it.

