## JOSEPH M. MARES AND OTHERS v. J. F. JANUTKA.[1]

January 3, 1936.

No. 30,726.

[1]Reported in 264 N. W. 222.

88

W. H. Leeman, for appellants.
John H. Lebens and George T. Havel, for respondent.

Julius J. Olson, Justice.

Plaintiffs, residents and taxpayers of the city of Montgomery, sued defendant to compel him to restore to the city treasury certain money received by him from sale of merchandise and materials to the city during the time he was a member of its council. Counsel for the parties stipulated the facts, in substance, as follows: That the merchandise so sold by defendant to the city "was purchased and delivered on open running account and at fair and reasonable prices, and was used by said city in the exercise of its governmental and corporate functions. That all of said merchandise had been fully paid for upon duly verified, itemized bills rendered to said city from time to time, and after said bills had been regularly audited, allowed and ordered paid by the governing body of said city. That the said purchases by said city were within the power of said city to make, and that it is impossible for said city to restore said merchandise or any part thereof."

Upon this showing the court ordered judgment for defendant, and in conformity therewith judgment was duly entered. The appeal is therefrom.

Plaintiffs invoke the provision of the city charter, L. 1870, c. 31, § 20, which reads:

"No officer elected or appointed to office under the provisions of this charter shall be a party to or interested in any contract in which the city is interested, made while such officer is holding office";

also, 2 Mason Minn. St. 1927, § 10305, reading:

"Every public officer who shall be authorized to sell or lease any property, to make any contract in his official capacity, or to take part in making any such sale, lease, or contract, and every employe of such officer, who shall voluntarily become interested individually in such sale, lease, or contract, directly or indirectly, shall be guilty of a gross misdemeanor."

They cite and rely upon Currie v. School Dist. No. 26, 35 Minn. 163, 27 N. W. 922; Stone v. Bevans, 88 Minn. 127, 92 N. W. 520, 97 A. S. R. 506; City of Minneapolis v. Canterbury, 122 Minn. 301, 142 N. W. 812, 48 L.R.A.(N.S.) 842, Ann. Cas. 1914D, 804, and other cases of similar import. In the Stone case, 88 Minn. 127, 92 N. W. 520, 97 A. S. R. 506, the defendant Bevans was president of the village council. He rendered personal service for the village not included within his duties as its president. At a meeting held when he was absent a resolution was adopted by the council whereby $150 was voted as his compensation for the service theretofore rendered, and he was paid that sum. Plaintiff brought suit as a taxpayer to compel restitution. In the opinion this court reviewed prior cases and also construed the statutory provision we have quoted. Said the court (88 Minn. 129, 130):

"It is therefore immaterial, in view of the admitted facts, that the trial court refused to receive evidence tending to show that the services rendered by the president of the council were meritorious and beneficial, since he had no right to negotiate for or enter into the same with the official body of which he was a member at the time, and it is not now an open question in this state that money thus voted by a municipal body to one of its members may be re-

covered for the municipality at the suit of a taxpayer. Bailey v. Strachan, 77 Minn. 526, 80 N. W. 694."

In City of Minneapolis v. Canterbury, 122 Minn. 301, 142 N. W. 812, 48 L.R.A. (N.S.) 842, Ann. Cas. 1914D, 804, defendant, an officer of the city, had made a profit out of the sale of some real estate to it. There the facts found were that he purchased the property pursuant to a plan to sell it to the city, and that the sale by him to the city's vendor was simply a subterfuge designed to enable him to carry out the plan. This court sustained the recovery awarded plaintiff in the court below. It is not necessary here to cite or refer to all the cases considered by the court in that opinion. The same will be found in 122 Minn. 307 to 309, inclusive.

But these cases do not decide the issue presented in the present case. In Bell v. Kirkland, 102 Minn. 213, 113 N. W. 271, 13 L.R.A. (N.S.) 793, 120 A. S. R. 621, this court fully and carefully discussed cases bearing upon this subject. Distinction is therein clearly drawn between contracts *"ultra vires"* in a primary and secondary sense. An *ultra vires* contract in the primary sense is therein defined (102 Minn. 218) as one "not within the scope of the powers of a corporation to make under any circumstances, or for any purposes." A contract in the secondary sense is one (102 Minn. 219) "which the corporation had a right to execute, but with respect to which there has been some irregularity or defect in the actual exercise of the power 'in some particular or through some undisclosed circumstance' affecting the individual contract in issue." So the question here is whether the instant contract is one falling within the first or second classification. If the question were new in this state there is much to be said to support plaintiffs' position. But this court is definitely committed to the rule that where, as here, "property has changed hands under such an agreement [*i. e.* a contract within corporate capacity but defective in some particular] and has been paid for, neither law nor equity will ordinarily compel a restitution of the purchase price." Frisch v. City of St. Charles, 167 Minn. 171, 172, 208 N. W. 650, and cases cited therein, pp. 172, 173. The reason for the rule is therein stated [167 Minn. 173]:

"The attempted contract, being void, is disregarded and in its place the quasi-contractual obligation to do justice is enforced. That obligation 'binds all persons, natural and artificial.' [Citing cases.] A municipal corporation may be bound by it."

There defendant had sold a lot to the city, receiving $600 therefor as purchase money. The suit was brought to compel restitution of the diverted money. The court said (167 Minn. 173):

"The doctrine is too well-established to need discussion and if it had been shown that defendant city had so far progressed with the building of the new city hall on the property in question that it could not restore possession or ought not to be required to do so, the way to an affirmance would be clear. But all we have in this record is a void contract of purchase and, in its attempted execution, payment of $600 of the city's money to one who (so far as the *record* shows) had no right to take or retain it. The proof stopping there, the dismissal was improper. If there were nothing more to the case, there should be a judgment for restitution.

"If it had been proved, as in the argument it has been claimed, that the city had not only gone into possession but had so far proceeded with the construction of the new building that, as a practical matter, it would have to complete it and retain the lot, the situation would be different. The purchase was within the powers of the city. It would be impossible practically to return the property to its original owner, and, only a fair and reasonable price having been paid, the money could not be recovered by or for the city. But there should be no judgment to that effect nor in this case should there be one against plaintiffs until it is determined on competent evidence that the value to the city of the property in question is not less than $600."

Plaintiffs' argument to the effect that permitting recovery here is a roundabout way of upholding an invalid contract, thereby enabling a municipality to do indirectly that which it cannot do directly, is forceful. But that very argument was fully considered in First Nat. Bank v. Village of Goodhue, 120 Minn. 362, 366, 139 N. W. 599, 601, 43 L.R.A.(N.S.) 84, where this court said:

"We are unable to assign a good reason for differentiating between the private and the municipal corporations as respects the rule of justice and common honesty. The private corporation in a case of this kind would not be heard to dispute its liability, nor should a public corporation be permitted to do so where, as in the case at bar, there is no question of fraud or collusion, and no concerted purpose between the village officers and plaintiff intentionally to evade or violate the law."

Later cases bearing upon this subject and directly supporting defendant's contention are Wakely v. County of St. Louis, 184 Minn. 613, 240 N. W. 103, 84 A. L. R. 920, and Lindgren v. Towns of Algoma and Norland, 187 Minn. 31, 34, 244 N. W. 70.

Reviewing prior decisions of this court bearing upon the subject here discussed, the following principles seem to be established:

1. Where, as in City of Chaska v. Hedman, 53 Minn. 525, 55 N. W. 737, the municipality enters into a contract beyond its corporate powers, no liability by virtue thereof will attach no matter what the form of suit or action for its enforcement may be.

2. Where, as in Stone v. Bevans, 88 Minn. 127, 92 N. W. 520, 97 A. S. R. 506, the contract involves services by an officer for his municipality in violation of the statute (§ 10305), no recovery may be had by him in any form of suit or action; and if payment for such services has been made by the municipality, same may be recovered in an appropriate suit for restitution.

3. Such illegal contract cannot be made the basis for a cause of action or defense. Currie v. School Dist. No. 26, 35 Minn. 163, 27 N. W. 922; Bjelland v. City of Mankato, 112 Minn. 24, 127 N. W. 397, 140 A. S. R. 460. But when such officer sells to his municipality property within its municipal powers to acquire and use, and it is so acquired and used, liability may be enforced *quasi ex contractu*, but in no event beyond the value of the property to the municipality. First Nat. Bank v. Village of Goodhue, 120 Minn. 362, 139 N. W. 599, 43 L.R.A.(N.S.) 84; Frisch v. City of St. Charles, 167 Minn. 171, 208 N. W. 650; Wakely v. County of St. Louis, 184 Minn. 613, 240 N. W. 103, 84 A. L. R. 920; and Lindgren

v. Towns of Algoma and Norland, 187 Minn. 31, 244 N. W. 70, cited above.

The facts here appearing bring the case within the rule announced in the last mentioned cases. As a consequence, the judgment must be and is affirmed.