Theodore E. THOMPSON, et al., Appellants,

v.

L. J. VOLDAHL, INC., et al., Appellees.

No. 54275.

Supreme Court of Iowa.

June 17, 1971.

**378**

Fitzgibbons Brothers, Estherville, for appellants.

Nels W. Branstad, Forest City, for appellee Thompson-Courier.

Laird, Burington, Bovard & Heiny, Mason City, for appellee L. J. Voldahl, Inc.

Hoxie & Teske, Waterloo, for appellee Zeidlers, Inc.

BECKER, Justice.

Plaintiff taxpayers seek judgment in favor of Winnebago County for special assessment funds paid by the county to defendants as partial payment on void contracts. Plaintiffs seek eventual repayment of such funds to them as the special assessment taxpayers. Trial court dismissed plaintiffs' petition. We reverse and remand.

This case is an aftermath of our holding in Thompson v. Joint Drainage District, No. 3–11, 259 Iowa 462, 143 N.W.2d 326 (1966). We there held certain special assessments illegal and void. The contracts on which the assessments were based were not specifically mentioned in the opinion. However, the trial court had held the Board of Supervisors in making the contracts (with defendants here) acted without jurisdiction and enjoined collection of the special assessments levied pursuant to the void proceedings. We affirmed.

For full understanding of the history of this litigation we must take note of a second lawsuit prosecuted to conclusion by plaintiffs herein and not appealed. After the holding noted above plaintiffs sought mandamus against the Joint Drainage District, the Board of Supervisors, the County Auditor and County Treasurer, seeking refund of the special assessments paid by plaintiffs under the void assessments. This was Winnebago County action No. 11016, separate and distinct from the present action. The court ordered the county officers to make return showing the collections made under the void special assessments, disbursements and balance on hand. It held the undisbursed funds were to be distributed to the taxpayers in a pro rata formula basis but the disbursed funds could not be recovered from the county:

"If plaintiffs are entitled to relief, refund of the assessments paid must be from funds paid by plaintiffs, not from general county funds. A refund of spe-

cial taxes, such as drainage district taxes, erroneously or illegally exacted, cannot be paid from general county funds, but the only source of refund thereof is District Drainage funds. Whisenand vs. Nutt, 235 Iowa 301, 15 N.W.2d 533.

"It further appears that if there is to be a refund of a drainage assessment, it must come from the funds paid in as a result of the assessment, not from other funds belonging to the Drainage District or portion thereof. See Kerr vs. Chilton, 249 Iowa 1159, 91 N.W.2d 579."

The county officials did not appeal. They complied with the ruling, accounted for the funds and repaid the undisbursed funds to the special assessment taxpayers, pro rata. They now have no funds in their hands from the special assessment collections. The accounting shows the following disbursements had been made to defendants:

| Name | Warrant | Amount Received |
|------|---------|-----------------|
| Thompson Courier | (No. 1) | $ 54.21 |
| L. J. Voldahl, Inc. | (No. 2) | 3,012.80 |
| Zeidler Concrete Products Co. | (Nos. 3 to 9 Inc.) | 6,739.90 |
| | Total | $9,806.91 |

The trial court refused to order the county officials to attempt to recover the disbursements. The defendants admitted demand for such action had been made and refused. The court added its refusal was, "* * * without prejudice to the rights of plaintiffs to bring a separate action against the payees of Warrants 1 to 12, if any they have." This action ensued.

Plaintiffs here seek judgment against defendants in the amounts set out above, to be paid to County Treasurer of Winnebago County and by him to be refunded to plaintiffs.

Details of how this situation occurred and why the original contracts between the County Board of Supervisors and defendant contractors were void are to be found in Thompson v. Joint Drainage District No. 3–11, supra. The parties here agree defendant contractors acted in good faith in entering into the contracts subsequently declared void. The charges made by defendants were reasonable and the warrants issued in payment of work partially completed were for the contested project.

The records of Cause No. 11016 show without dispute that the funds used to pay defendants were taken from the special assessments paid by plaintiffs; some specially assessed taxpayers paid nothing on their special assessments while many others (including these plaintiffs) paid in full; plaintiffs in Cause No. 11016, with one exception, received back from the undisbursed funds a repayment of 5.9 percent of the funds they had paid in. The one exception was Ingvald B. Olsen who received 100 percent repayment ($506.90) because he had paid the assessment "under protest".

The various types of illegally assessed taxpayers fall into several classifications: (1) There are those who simply failed to pay the void assessments. They paid nothing and are out nothing but have the benefit of defendants' work. (2) The protest taxpayer was fully reimbursed but has the benefit of defendants' work. (3) The taxpayer Orville Sill who elected the 10-year option, paid only one-tenth of the assessment, received back 5.9 percent of that, but had the benefit of defendants' work. (4) Some taxpayers paid in full and are not shown to have sought reimbursement. They have received nothing back and have the benefit of defendants' work. (5) Finally, plaintiffs who have paid in full, have received back 5.9 percent of full payment. They also have received the benefit of de-

fendants' work. Taxes assessed and paid range in amount from a low of 42 cents to a high of $2,492.

Defendants, on the other hand, have reasonable bills or claims totaling $17,232.55

on which they have received payment of $9,806.91. There is also a wide discrepancy as to how defendants have fared under the accident of payments to be found in this case. The total claims and amounts received by each contractor follows:

| Name | Amount Claimed | Amount Paid | Percent of Claim Paid |
|------|---------------|-------------|----------------------|
| Thompson Courier | $ 68.87 | $ 54.21 | 78.71% |
| L. J. Voldahl | 4,300.00 | 3,012.80 | 70.06 |
| Zeidler Concrete Products | 12,863.68 | 6,739.90 | 52.39 |
| * Leonard Harmon | 3,802.49 | 2,422.08 | 63.70 |
| ** Wallace Holland | 1,574.83 | | |
| Roger Brown | 200.00 | | |
| Winnebago Co.Sec.Road | 175.00 | | |

\* Leonard Harmon died before this action was started and is not a defendant.
\*\* The last three claimants received nothing. Thus they are not defendants here.

◆

I. Where a public contract is declared void by the courts the contractor-claimant cannot recover unpaid claims from the public coffers. We have held that one who contracts with a municipality or a political subdivision is bound at its peril to take cognizance of statutory limitations upon the authority of the government agency. Recovery is denied under the frim public policy that the taxpayers should be protected from the evasion of statutory prerequisites by the public body and from the opportunity for fraud or collusion between public officials and contracting parties. Everds Brothers v. Gillespie, 256 Iowa 317 at 322, 126 N.W.2d 274 at 277; Madrid Lumber Co. v. Boone County, 255 Iowa 380 at 386, 121 N.W.2d 523 at 527; Lytle v. City of Ames, 225 Iowa 199 at 214, 279 N.W. 453 at 461.

II. Defendants do not dispute this Iowa law and do not seek to recover the balance of their claims. But they maintain their right to keep what they have already been paid. They are able to cite many cases throughout the country where courts have refused to compel repayment of funds paid on a void public contract. Recovery in such cases is usually denied on broad equitable principles. He who seeks equity must do equity. The parties cannot, under the circumstances, be restored to the *status quo ante bellum*. Restitution is impossible.

Plaintiffs (or the taxing body) will be unjustly enriched if recovery back is allowed. Therefore equity will not aid plaintiffs to recover the money illegally paid but will leave the parties where it finds them. Kagy v. Independent District of West D. M., 117 Iowa 694, 89 N.W. 972, (1902).

An annotation found at 140 A.L.R. 583, 585, entitled Recovery Back-Invalid Public Contract, collects a large number of cases dealing with this problem. The author warns, "\* \* \* the formulation of any general principles of purportedly universal application, with respect to the right of public body to recover back sums paid under an invalid or unenforceable contract, is an exceedingly dangerous undertaking." We agree. The myriad fact situations and consequent diverse results defy formulation of general principles. We make no effort to analyze the various cases but confine ourselves to the facts at hand and a few cases considered particularly pertinent.

The two Iowa cases closest in point are Kagy v. Independent District, supra, and Miller v. Des Moines, 143 Iowa 409, 122 N.W. 226 (1909). In Kagy the contracts under attack were between members of the school board as contractors and the board itself. Also, some of the contracts were let *sans* prior voter and school superintendent approval as required by law. Plaintiff

taxpayer sought to have the funds returned to the school board. The court did not refer to these contracts as void but strongly intimated they were merely voidable. (Loc. cit. 117 Iowa at 698, 89 N.W. at 973). This court then said: "It is a general principle of equitable relief that the party against whom the relief is sought shall be remitted to the position he occupied before the transaction complained of." We gave no serious consideration to the effect of this decision as encouraging formation of illegal contracts with public bodies which would, under such a holding, allow *de facto* payment on contracts that were clearly *de jure* illegal. Plaintiffs urge us to overrule Kagy v. Independent District, supra. For reasons to be discussed we find it unnecessary to take such action in deciding this case.

Miller v. Des Moines, supra, was a case where a printing contract was let to other than the lowest bidder. The court determined the action was void. Action by an individual taxpayer to restrain performance of the action was upheld insofar as the contract was declared void but the court refused to restrain its performance or to hold the contractor was not entitled to be paid for work done on the then completed contract. The court alluded to the good faith of the contractor, the necessity of the work, failure of plaintiff to seek a temporary restraining order, and necessity that the functions of government continue. We are also urged to overrule this case but find it distinguishable.

■ Here we are not dealing with the action of taxpayers who ask that the funds illegally paid be poured back into the coffers of the general fund of a public taxing body. Plaintiffs are special assessment taxpayers. In Thompson v. Joint Drainage

District, No. 3–11, supra, and in Voogd v. Joint Drainage District No. 3–11 (1971) Iowa, 188 N.W.2d 387, we have emphasized the importance of the public policy preserving to taxpayers the right to notice and hearing before special assessments are levied. Taxpayers are not to be burdened with large, unexpected assessments without a chance to know about and contest the validity of the project and consequent charges. This too is an equity to be weighed in the balance with this court's reluctance to condone unjust enrichment.

The money now held by defendants is plaintiffs' money. If returned it will not go to the general fund for general use after the taxing body has had the benefit of defendants' efforts. Rather, it will go to the special assessment taxpayers who contend they were never afforded the opportunity to test the necessity for the work performed. Stated otherwise, the taxpayers in the Kagy and Miller cases could only benefit indirectly and minimally as general taxpayers by adding the recovered money to the general coffers.[1] Plaintiffs here have claims for special assessments ranging as high as $2492. The ordinary case examined usually involves relatively modest tax burdens spread among a large number of taxpayers. This is pertinent to the equities to be examined because only strong equitable grounds will allow an illegal contractor to keep what has been illegally paid. Hence the entire factual situation is of paramount importance.

Chief Justice Fuld considered the matter of recovery back of monies paid on an illegal public contract in Gerzof v. Sweeney, 22 N.Y.2d 297, 292 N.Y.S.2d 640, 239 N.E. 2d 521, 33 A.L.R.3d 387, 393 (1968):

"There should, logically, be no difference in ultimate consequence between the

---

1. None of the many cases listed in the annotations found in 140 A.L.R. 583 and 33 A.L.R.3d 397 make this distinction. Most, if not all, involve payments from funds already collected from tax or other revenue sources. Special assessment cases commonly involve cancellation of assessments but do not involve *repayment* of funds already collected. Such cases are determined under the rules noted in Division I. Cf. Jackson v. City of Creston, 206 Iowa 244, 220 N.W. 92 (1928); 10 Drake L.Rev. 53, 72, footnotes 201–204.

case where a vendor has been paid under an illegal contract and one in which payment has not yet been made. If, in the latter case, he is denied payment, he should, in the former, be required to return the payment unlawfully received—and he should not be excused from making this refund simply because it is impossible or intolerably difficult for the municipality to restore the illegally purchased goods or services to the vendor. In neither case can the usual concern of equity to prevent unjust enrichment be allowed to overcome and extinguish the special safeguards which the Legislature has provided for the public treasury. * * *."

The New York court, in a striking illustration of the warning in A.L.R., then departed from the logical rule recognized and limited recovery by the public body on equitable principles. It held the enrichment was entirely too great and the loss by the contractor, $750,000, entirely too large to be allowed to stand without modification. It then worked out its own equitable solution and ordered repayment of part of the contract price.

We need not determine for this court the validity of resting a decision on the magnitude of the sums involved. We have no such large sums involved here. Nor can we equitably adjust the funds received by the various defendants. The disparity of treatment of both the special assessment taxpayers on the one hand and the various contractors on the other hand does not militate toward a solution which would simply leave the parties where it finds them. Under such a solution some taxpayers pay in full, others escape with no payment. Some contractors receive nothing for their work, others are paid up to 70 percent of the claim made. Thus a solution akin to the solution used by Judge Fuld is inappropriate. Here defendants must be allowed to keep what they have been paid or judgment must be entered against them for the amounts received.

In considering the equities of the situation we find both the contractors and the taxpayers, if left in their present posture, will have been treated in grossly disparate manners. This is a direct aftermath of the illegal contracts to which defendants were party. We can see no equity in allowing these disparate treatments to continue.

■ Ordinarily the loss must fall on contractors who enter these public contracts charged with knowledge that if the contract is void they cannot recover. In the absence of strong countervailing equities the accident of prepayment in whole or in part does not change the rule. In this case the loss must be borne by defendant contractors.

■ III. Defendants also argue that section 455.109, 1966 Code, provides for a reassessment to remedy jurisdictional defects in drainage assessments and it would therefore be manifestly futile and useless to grant these plaintiffs relief when the property could be reassessed.

We do not have the benefit of a brief on this point from plaintiffs but our own research convinces us defendants' position is without merit.

Section 455.109 provides:

"Whenever any special assessment upon any lands within any drainage district shall have been *heretofore* adjudged to be void for any jurisdictional defect or for any illegality * * * and the improvement shall have been wholly completed, the board * * * shall have power to remedy such illegality * * * and shall then cause a reassessment of such land to be made on an equitable basis with other land in the district by taking the steps required by law in the making of an original assessment and relevying the tax in accordance with such assessment, and such tax shall have the same force and effect as though the board or boards of supervisors had jurisdiction in the first instance and no ille-

gality or uncertainty existed in the contract." (Emphasis supplied).

Without deciding the serious constitutional question which would arise when the defect is lack of notice and hearing, we interpret the statute as being curative and retroactive only and as intended to remedy defects in proceedings which occurred prior to the enactment of the statute. The use of the word "heretofore" can lead us to no other conclusion. The cases cited by defendants all relate to the legalizing of proceedings which took place prior to the curative act therein involved. Smittle v. Haag, 140 Iowa 492, 496, 118 N.W. 869, 870 (1908); Thompson v. Mitchell, 133 Iowa 527, 531, 110 N.W. 901, 903 (1907); Ross v. Supervisors, 128 Iowa 427, 431, 104 N.W. 506, 507 (1905).

IV. This cause must therefore be reversed and remanded for entry of judgment in favor of Winnebago County for the amounts prayed for by plaintiffs together with interest thereon. Since Winnebago County and its officers are not parties to this action disposition of the funds after collection by the county is not determined here.

Reversed and remanded.

MASON, RAWLINGS, LeGRAND and REES, JJ., concur.

STUART, J., concurs specially, and UHLENHOPP, J., and MOORE, C. J., dissent.

REYNOLDSON, J., takes no part.

STUART, Justice (specially concurring).

I am unable to concur in either the majority or minority opinions. Notwithstanding the objection to multiple opinions, I feel my reasons should be stated briefly.

In this case the firm public policy denying recovery to public contractors in order to protect the taxpayers from the evasion of statutory prerequisites by the public body and to take away the opportunity for fraud and collusion between public officials and contracting parties comes in conflict with the basic equitable principle that he who seeks equity must do equity.

The authorities support the position taken by Justice Uhlenhopp in his dissent, but I believe there is merit in plaintiff's argument that a rule letting a contractor retain all he has been paid under a void contract would encourage officials and those contracting with them under such contract to hasten the work and payment to circumvent mandatory statutes. This danger coupled with the fact that equity should only seek to prevent the district or taxpayers from being unjustly enriched at the expense of a party who acted in good faith, leads me to the conclusion that the best result would be to allow the contractor to retain only the amount by which he can show each property was benefitted by his goods and services. I do not believe the requirement that the contractor show the amount by which the value of the property has been enhanced by his efforts poses any insurmountable difficulty.

This restriction on the amount a contractor can retain would remove all chance of profit from the transaction for him. This fact, when considered along with the rule that he cannot recover any sums still due in either law or equity whether the district was benefitted or not, should provide adequate deterrents to attempts to evade protective statutes without treating innocent victims of uncertain statutory requirements as harshly as they are treated under the majority opinion. It is not realistic to place the entire burden of knowing the statutory requirement on the contractor when it was necessary to have the statute construed by the court.

Insofar as this record shows, there has been no undue haste in the payment, no overreaching, fraud or bad faith. No countervailing equities were advanced against defendants. Under these circumstances, the amount plaintiffs are entitled to recover should be limited by the amount

by which they and the district have been unjustly enriched.

I do not consider my position here in conflict with my concurrence in Voogd, et al. v. Joint Drainage Dist. No. 3-11, et al., Iowa, 188 N.W.2d 387, filed June 17, 1971.

The contractors were not parties to that action. The question of their good faith was not an issue. Under my position the contractors' rights to retain any portion of the balance would depend upon the record made if suit is brought against them.

I would reverse and remand the case for a determination of the amount by which plaintiffs have been unjustly enriched.

UHLENHOPP, Justice (dissenting).

This appeal in equity presents a problem of restitution—the so-called "recovery back" problem which arises when a contractor has received payment for construction of a public improvement under a purported contract which was actually invalid because of procedural irregularities by public authorities.

Several circumstances are important. The supervisors and the contractors acted in good faith; no fraud or concealment existed. The contractors did not hasten to the courthouse to get their money, knowing that the public's proceedings were invalid. The contractors' charges were fair and reasonable. The landowners received the benefit of the contractors' work and have not and cannot restore the status quo ante. The project of cleaning out the lateral drain was within the general power of the supervisors, but the manner in which they exercised the power was not correct. (The supervisors thought the word "district" in the statute means the drainage district. Code, 1962, § 455.135. Subsequently, however—four years after the work was done and two years after the contractors were paid—this court held that "district" means subdistrict when only a lateral drain is involved. Thompson v. Joint Drainage Dist. No. 3-11, 259 Iowa 462, 143 N.W.2d 326.)

Under all such circumstances, we should deny recovery back of the payments made to the contractors, on the basis of authority and of the equities.

I. The great weight of authority, including Iowa authority since 1872, simply denies recovery back under such conditions. In 1872 this court decided Long v. Boone County, 36 Iowa 60. There a county official, without necessary public vote, ordered certain road work done. The reporter succinctly stated the holding of the court in headnote 6:

> When the legally constituted agent of the county contracts for work in respect to which he has no power unless authorized by a special vote of the people, and executes a warrant for the amount thereof on the treasurer of the county which is voluntarily paid by the latter officer, the county cannot recover back the amount so voluntarily paid.

See also Kagy v. Independent Dist. of West Des Moines, 117 Iowa 694, 89 N.W. 972; Diver v. Keokuk Savings Bank, 126 Iowa 691, 102 N.W. 542; Miller v. Des Moines, 143 Iowa 409, 425, 122 N.W. 226, 232 ("To say that the party doing such work must receive no remuneration therefor, and must return the compensation already received, is to impose all the penalty upon an innocent party for the profit of the only party chargeable with the wrong. We are not disposed to so order."); cf. Painter v. Polk County, 81 Iowa 242, 47 N.W. 65; Des Moines v. Horrabin, 204 Iowa 683, 687–688, 215 N.W. 967, 969 ("There is no charge of fraud or unfair dealing in this case, and it is not disputed that all parties acted in the best faith. Furthermore, it may be observed that the city of Des Moines has accepted the benefits of the supplemental contract and still retains them. As a matter of fact, it cannot place the appellee in *statu quo*. There is a strong morality in this case.").

Decisions elsewhere are of like import, under the circumstances of this case. Recovery back denied where self-dealing involved but no fraud: Brewer v. Howell, 227 Ark. 517, 299 S.W.2d 851; Culver ex rel. Longyear v. Brown, 259 Mich. 294, 243 N.W. 10; Mares v. Janutka, 196 Minn. 87, 264 N.W. 222; Polk Township v. Spencer, 364 Mo. 97, 104, 259 S.W.2d 804, 807 ("In short, in the circumstances of this case, there has been no unjust enrichment of the defendant or any loss to the plaintiff and there is no occasion for the affirmative application of the principles of restitution."); Village of Bethesda v. Mallonee, 60 Ohio Ops. 107, 75 Ohio L.Abst. 257, 136 N.E.2d 457. Recovery back denied where failure to comply with competitive bidding requirements but good faith: Gamewell Co. v. Phoenix, 216 F.2d 928 (9th Cir.); State v. Fourth Nat'l Bank, 270 Ala. 135, 117 So.2d 145; Pillager v. Hewett, 98 Minn. 265, 107 N.W. 815; Burns v. Nashville, 142 Tenn. 541, 221 S.W. 828; Ellefson v. Smith, 182 Wis. 398, 196 N.W. 834; Tobin v. Town Council of Sundance, 45 Wyo. 219, 17 P.2d 666. Recovery back denied where various other illegalities: Vincennes Bridge Co. v. Board of County Commissioners, 248 F. 93, 99–100 (8th Cir.) ("since the county has paid it, it cannot recover it back because it has received, accepted, and is using, and has never tendered or offer [sic] to return, the bridges"); Miles Auto Co. v. Dorsey, 163 Ky. 692, 174 S.W. 502; Farmer v. St. Paul, 65 Minn. 176, 67 N.W. 990; Love Co. v. Carthage, 218 Miss. 11, 65 So.2d 568; Bride v. Slater, 263 S.W.2d 22 (Mo.); State ex rel. Hunt v. Fronizer, 77 Ohio St. 7, 16, 82 N.E. 518, 520 ("there can be no recovery back of the money paid without putting, or showing readiness to put, the other party in *statu quo*"); Scott Township School Dist. Authority v. Branna Const. Corp., 409 Pa. 136, 185 A.2d 320; Jones v. Centralia, 157 Wash. 194, 222, 289 P. 3, 13 ("when labor has been performed and material furnished in good faith under a contract with a municipal corporation, and such contract, by reason of some mistake in procedure, is void, the person furnishing the labor or material is entitled to retain money which has been paid him"); Frederick v. Douglas County, 96 Wis. 411, 71 N.W. 798. See also Moore v. Mayor, 73 N.Y. 238.

II. Recovery back should also simply be denied here on the basis of the equities.

A governmental subdivision seeking to recover back payments made to a contractor is essentially asking to be placed in the position it was before; it is seeking restitution. Restitution is founded on equitable considerations. Restatement, Restitution, 4–9.

When governmental officials do not correctly follow procedural statutes and let a purported contract which is actually invalid, the contractor, though he be ever so innocent and his performance be ever so workmanlike, cannot recover on the purported contract, and he gets nothing. This result is necessary or the court would affirmatively use its powers to aid in the avoidance of the statutory procedural requirements. The court simply leaves the parties where it finds them. Everds Bros. v. Gillespie, 256 Iowa 317, 126 N.W.2d 274. The policy has been carried a step farther. If the contractor admits the contract is invalid and merely asks for the reasonable value of his work, he is also denied relief. This result is necessary for the same reason. Madrid Lumber Co. v. Boone County, 255 Iowa 380, 121 N.W.2d 523.

The recovery back situation involves yet another step. The contract has been let, the work has been done, the contractor has been paid, and then the governmental subdivision or landowners seek to recover back without restoring the contractor's performance to him. This time the governmental subdivision or landowners are the ones asking the court to exercise its powers. But this time by the exercise of its powers the court would work a positive injustice—through the court's own affirmative action the subdivision or landowners would end up with both the contractor's

performance and the money. Again the court should simply leave the parties where it finds them.

Fundamentally, two conflicting interests are involved: those of the public under the procedural statutes relating to public improvements, and those of the good-faith contractor who furnishes value. The task is to balance those interests. Restatement, Restitution, § 62, Comment b. When the contractor has not been paid, the procedural statutes are vindicated by denying him relief on contract or quantum meruit. Thus the court does not affirmatively use its powers to assist in the avoidance of the statutes. But when the contractor has been paid and the landowners retain his performance, the interests of the public are adequately protected by allowing recovery back only if the landowners show one or more circumstances, such as bad faith by the contractor, disentitling him to retain the payments in good conscience. Thus the court does not affirmatively use its powers to take the money from the contractor unless as a matter of justice he should not keep it. E. g., action of officials wholly beyond their powers, Gamewell Co. v. Phoenix, 216 F.2d 928 (9th Cir.); Laird Norton Yards v. Rochester, 117 Minn. 114, 134 N.W. 644; Grand River Township v. Cooke Sales & Service, 267 S.W.2d 322 (Mo.); Heese v. Wenke, 161 Neb. 311, 73 N.W.2d 223; haste in disbursement to contractor, Tobin v. Town Council of Sundance, 45 Wyo. 219, 253, 17 P.2d 666, 678 ("haste in disbursement, willful evasion of the law, fraud, collusion, concealment, or elements which disclose violations or principles of public policy"); contractor's charges not at reasonable rates, Culver ex rel. Longyear v. Brown, 259 Mich. 294, 243 N.W. 10; expenditure for illegitimate purpose, Chaska v. Hedman, 53 Minn. 525, 55 N.W. 737; participation by contractor in evasion of statute—tailoring specifications to exclude all but him, Mayes Printing Co. v. Flowers, 154 So.2d 859 (Fla.); fraud, Ritchie v. Topeka, 91 Kan. 615, 138 P. 618; tender

of return of performance—road equipment, Grand River Township v. Cooke Sales & Service, 267 S.W.2d 322 (Mo.).

In none of the cases in which recovery back has been allowed did the conduct of the contractor even approach the innocence of the conduct of the contractors here. See Annot. 140 A.L.R. 583. No circumstances exist in this case disentitling the contractors to keep the payments.

The result in this case is not changed by a couple additional features—partial payment of the contractors and partial payment of the assessments. All of the contractors received only part of their money and they respectively received varying proportions of their money. This does not alter the general principle allowing a good faith contractor to keep the money to the extent he has been paid. All this means is that the contractors who received a smaller proportion of their money are less fortunate than those who received a larger proportion. All of them, of course, will suffer irremediable loss to the extent they are unpaid, by virtue of Madrid Lumber Co. v. Boone County, 255 Iowa 380, 121 N.W.2d 523.

Nor is the general principle denying recovery back changed by the varying proportions of the assessments actually paid by the respective landowners. All this means is that not all landowners receive the same windfall. A landowner who paid none of his assessment has a complete windfall, whereas a landowner who paid half of his assessment has a 50% windfall and a landowner who paid his entire assessment has no windfall. Granting the landowners recovery back from the contractors would simply work a complete windfall to all landowners—the money and the performance both.

Our general rule preventing an unpaid, good faith contractor from recovering anything at law or in equity is harsh enough. We ought not extend the rule to the case

of the paid or partly paid contractor, and thus affirmatively use the power of the courts to make a harsh result more harsh.

The decree of the trial court should be affirmed.

MOORE, C. J., joins in this dissent.